Opinion issued December 30, 2005











    



In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00751-CV




MICHELLE LYNN VASQUEZ, Appellant

V.

TEXAS DEPARTMENT OF PROTECTIVE & REGULATORY SERVICES,
Appellee




On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2004-00430J




DISSENTING OPINION
          Because the majority errs in holding that the evidence in this case is legally
sufficient to support a finding, under Texas Family Code section 161.001(1)(E),


 that
appellant, Michelle Lynn Vasquez, engaged in conduct which endangered the
physical or emotional well-being of her son, Z.M., I respectfully dissent.
The Issue Presented
          In her first issue, Vasquez argues that the trial court erred in terminating her 
parental rights to Z.M. because there is no evidence in the record to support a finding,
under section 161.001(1)(E), that she had endangered the physical or emotional well
being of Z.M. 
          In response, the Texas Department of Protective and Regulatory Services
(“TDPRS”) concedes that the “primary conduct at issue in this case is the evidence
of . . . Vasquez’s illegal drug use.” It emphasizes that Vasquez admitted that M.D.V.,
another one of her children born prior to Z.M., “had marijuana in her system when
she was born” and that Vasquez “began smoking marijuana again within three months
of M.D.V.’s birth.” TDPRS then argues
What is most critical, however, is that after the Agency had already
worked with Ms. Vasquez from November of 2002, including after an
intensive family worker provided her one and one services and returned
M.D.V. to her care, Ms. Vasquez admitted she relapsed back into illegal
drug use in November of 2003, when Z.M. was only about 4 months old. 
 
. . . .
 
Ms. Vasquez’s deliberate and voluntary decision to continue her conduct
of illegal drug use was dangerous to Z.M., because it exposed Z.M. to
the possibility that her supervision would be subject to a parent impaired
in judgment by drug use and also raised the possibility that the parent
could be incarcerated for the crime of using illegal drugs. Ms.
Vasquez’s drug use endangered her child for purposes of a finding under
subsection (E). 

(Emphasis added). In fact, the record reveals that Vasquez admitted that she had a
week-long relapse, using marijuana,


 in November 2003.
          Thus, the issue squarely presented to this Court, and argued by the parties, is
whether Vasquez’s week-long relapse of marijuana use in November of 2003
amounted to conduct that endangered Z.M. for purposes of the trial court’s finding
under section 161.001(1)(E). Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2005).
As a matter of law, the mere possibility that Vasquez’s supervision of Z.M. might
have been impaired and the mere possibility that she could have been incarcerated for
her week-long use of marijuana in November of 2003 is not enough to forever
terminate her parental rights with respect to Z.M. 
 
Standard of ReviewThe United States Supreme Court has long recognized that a parent’s right to
“the companionship, care, custody, and management” of his or her children is a
constitutional interest “far more precious than any property right.” Santosky v.
Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982). In fact, the Supreme
Court has emphasized that “the interest of parents in the care, custody, and control of
their children—is perhaps the oldest of the fundamental liberty interests recognized
by this Court.” Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000). 
Likewise, the Texas Supreme Court has also concluded that “this natural parental
right” is “essential,” “a basic civil right of man,” and “far more precious than property
rights.” Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, “termination
proceedings should be strictly scrutinized, and involuntary termination statutes are
strictly construed in favor of the parent.” Id. 
          “A termination decree is complete, final, irrevocable, and divests for all time
that natural right as well as all legal rights, privileges, duties and powers with respect
to each other except for the child’s right to inherit.” Id. Therefore, “the evidence in
support of termination must be clear and convincing before a court may involuntarily
terminate a parent’s rights.” Id. (citing Santosky, 455 U.S. at 747, 102 S. Ct. at 1391;
Richardson v. Green, 677 S.W.2d 497, 500 (Tex. 1984)). Clear and convincing
evidence is “the measure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought to be
established.” Tex. Fam. Code Ann. § 101.007 (Vernon 2002); In re J.F.C., 96
S.W.3d 256, 264 (Tex. 2002). Because termination findings must be based upon
clear and convincing evidence, not simply a preponderance of the evidence, the Texas
Supreme Court has held that the traditional legal and factual standards of review are
inadequate. In re J.F.C., 96 S.W.3d at 264–66. Instead, both legal and factual
sufficiency reviews in termination cases must take into consideration whether the
evidence is such that a fact finder could reasonably form a firm belief or conviction
about the truth of the matter on which the State bears the burden of proof. Id. at
265–66. With respect to a legal sufficiency point, we “look at all the evidence in the
light most favorable to the finding to determine whether a reasonable trier of fact
could have formed a firm belief or conviction that its finding was true.” Id. at 266.
Endangerment
          In proceedings to terminate the parent-child relationship brought under section
161.001, TDPRS must establish, by clear and convincing evidence, one or more of
the acts or omissions enumerated under subsection (1) of the statute and that
termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001. 
Both elements must be established, and termination may not be based solely on the
best interest of the child as determined by the trier of fact. Tex. Dep’t of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). Under section 161.001(1)(E), a
court may order termination of the parent-child relationship only if it finds by clear
and convincing evidence that a parent has “engaged in conduct . . . which endangers
the physical or emotional well-being of the child.” Tex. Fam. Code Ann. §
161.001(1)(E) (emphasis added).
          In support of its argument that “Vasquez’s drug use endangered [Z.M.] for
purposes of a finding under subsection (E),” TDPRS relies on In re U.P., 105 S.W.3d
222 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); Robinson v. Texas
Department of Protective and Regulatory Services, 89 S.W.3d 679 (Tex.
App.—Houston [1st Dist.] 2002, no pet.); and In re W.A.B., 979 S.W.2d 804 (Tex.
App.—Houston [14th Dist.] 1998, pet. denied). However, each of these cases is
inapplicable to the facts before us.
          The court in U.P. held that “evidence that a parent provided a controlled
substance to the mother while the child was in utero, resulting in health problems
emanating solely from the presence of that substance in the child’s blood during
gestation, is clear and convincing evidence of conduct endangering the physical well-
being of a child under Family Code section 161.001(1)(E).” 105 S.W.3d at 236. The
court also held that evidence establishing that the parent had been arrested and
incarcerated for one year for selling narcotics, resulting in the child’s not knowing
either of her biological parents, was legally and factually sufficient to support the trial
court’s finding of endangerment to the child’s emotional well-being. Id. 
          In Robinson, a mother was arrested for the offense of possession of cocaine and
placed on community supervision for three years. 89 S.W.3d at 682. The mother
signed a family service plan with TDPRS, agreeing to avoid criminal activity and
submit to drug tests. Id. However, while on community supervision, the mother
tested positive for cocaine use, and, at that time, was pregnant. Id. The criminal
district court revoked the mother’s community supervision and she served three
months in jail. Id. This Court stated that the mother’s testimony “to her drug
problems ceasing within two months before her trial [did] not controvert evidence
that [her] illegal drug activity [had] been ongoing for 20 years.” Id. at 687. We held
that the evidence was factually sufficient to support a finding that the mother
endangered her children’s emotional well-being and that her use of narcotics during
her pregnancy could be considered endangering a child under section 161.001(1)(E). 
Id. at 687 & n.9.
          In W.A.B., the court held that a mother’s “criminal history, imprisonment, and
illegal drug use during and after her pregnancy constitute[d] a basis for termination
of her parental rights” under section 161.001(1)(E). 979 S.W.2d at 807 (emphasis
added).
          In contrast to these cases, there is no evidence in the record before us that
Vasquez had ever been arrested for or had used narcotics while pregnant with Z.M. 
Rather than discuss the cases actually relied upon by TDPRS in support of its
argument, the majority, citing In the Interest of M.D.V., No. 14-04-00463-CV, 2005
WL 2787006 (Tex. App.—Houston [14th Dist.] Oct. 27, 2005, no pet. h.) (not
designated for publication), reaches the following result:
Despite there being no direct evidence of appellant’s drug use or neglect
actually injuring Z.M., TDPRS presented evidence that appellant
engaged in a course of conduct that endangered Z.M.’s physical and
emotional well-being. 

However, although M.D.V. concerns Z.M.’s sibling, it is just as inapplicable as U.P.,
Robinson, and W.A.B. In rejecting Vasquez’s argument that her drug use did not
endanger M.D.V., the court in M.D.V. emphasized
To the contrary, appellant admitted using marijuana and illegal
prescription drugs while she was pregnant with M.D.V. A mother’s use
of drugs during pregnancy may be conduct which endangers the physical
and emotional well-being of the child. . . . Here, appellant’s drug use
did physically harm M.D.V. because she was born with marijuana in her
system. Nonetheless, appellant suggests M.D.V. was not harmed
because there is no evidence of any resulting medical condition. 
However, we reject the suggestion that a baby born with the abnormal
condition of marijuana in her system has not been harmed simply
because there is no evidence of further medical effects. Regardless, the
endangering act need not cause actual injury to the child; it is sufficient
that the act jeopardizes or exposes the child to loss or injury. . . . Here,
appellant’s drug use while pregnant endangered M.D.V. because she
was exposed to the possibility of being born with adverse medical
conditions. 
 
M.D.V., 2005 WL 2787006, at *3. Z.M. was born two years after M.D.V., and there
is no evidence that Vasquez used marijuana or any other narcotics while she was
pregnant with Z.M.
           Nevertheless, without reference to any pertinent dates, the majority summarizes
the evidence in support of its conclusion as follows:
(1) a continued pattern of drug use without regard for the effects that
it had on the children, including one child’s having tested positive
for drugs at birth and the appearance of appellant’s having been
“high” while caring for the children, including Z.M., as noted by
a case worker during visits to the home; 
 
(2) appellant’s failure to remain drug-free while under TDPRS’s
supervision, knowing that such conduct could place her children,
including Z.M., at risk; and 
 
(3) the case worker’s observation of incidents indicating appellant’s
negligent supervision (Z.M.’s being left unattended near a filled
bathtub with another child in the tub and M.R.M.’s exiting the
home into high-traffic areas), without appellant’s showing a
willingness to take corrective measures, such as child-proofing
the home. 
             
Although this summary is based, in large part, on Vasquez’s trial testimony, a review
of the specific evidence, in the context of the pertinent dates, reveals that there is no
evidence at all to support the trial court’s finding that Vasquez engaged in conduct
that endangered Z.M.
          Z.M. was born on July 9, 2003, and the original petition to terminate Vazquez’s
parental relationship with this child was filed on January 16, 2004. Prior to this time
period, Vazquez agreed to give temporary custody of her three other children to
TDPRS. From August 2003 to January 2004, Vasquez worked with a TDPRS
caseworker to bring her other three children back into her home. During this time
period, the only children living with Vasquez were Z.M. and an older child who was
returned to Vasquez in September 2003.
          Almost all of the incidents to which the majority refers in its above summary
involved Vasquez’s other children and occurred prior to Z.M.’s birth. In regard to the
majority’s specific reference that Vasquez left Z.M. “unattended near a filled
bathtub,” a TDPRS caseworker actually testified that, when she went to Vasquez’s
home at an unspecified date, Vasquez was in “the dining area on the phone and . . .
[another child] was in a tub filled with water and [Z.M.] was right by the tub in an
infant carrier, infant seat.” The caseworker made no reference as to the size of the
apartment, where the bathroom was in relation to the dining area of the apartment, or
how long Z.M. was left “unattended” when Vasquez opened the door for the
caseworker. 
          In regard to her continued pattern of drug use, Vasquez, when asked during her
trial testimony taken on April 1 and 2, 2004, if she had “ever used cocaine,” stated
that she had “[i]n the past . . . years ago . . . not very often.” She also admitted that,
“three years ago,” she had used Valium. Moreover, Vasquez conceded that, during
this time, “three years ago,” she used marijuana “like every evening practically.” She
explained that, after she put her three children to sleep, she would smoke marijuana
on her porch. After intervention, Vasquez completed parenting classes and inpatient
and outpatient treatment for her drug abuse. She conceded, however, that she had a
relapse in November 2003 by using marijuana for approximately one week and,
subsequently, tested positive for marijuana use. When pressed as to whether she “still
[had] a drug problem,” Vasquez explained “Well honestly, ma’am, regardless of what
may be said or done, a drug, a drug problem is an addiction. It’s something that will
never go away.” Vasquez denied ever using marijuana in the presence of her
children, and there is no evidence in the record to the contrary.
          This evidence is legally insufficient to support the trial court’s finding that
Vazquez “engaged in conduct . . . which endangered the physical or emotional well-being” of Z.M. Contrary to TDPRS’s argument, “endanger” means “more than a
threat of metaphysical injury or the possible ill effects of a less-than-ideal family
environment.” Boyd, 727 S.W.2d at 533. Rather, it means to actually “expose to loss
or injury; to jeopardize.” Id. The conduct must pose a real threat of injury or harm. 
          TDPRS’s argument that Vasquez’s use of marijuana “was dangerous to Z.M.,
because it exposed Z.M. to the possibility that her supervision would be subject to a
parent impaired in judgment by drug use and also raised the possibility that the parent
could be incarcerated for the crime of using illegal drugs” necessarily fails. Noting
that “mere imprisonment, alone, is not conduct endangering a child,” the Fort Worth
Court of Appeals recently held that evidence that a parent’s “conduct in taking . . .
methamphetamines that resulted in [the parent’s] arrest and imprisonment” was
legally insufficient to support a finding that the parent endangered his child’s physical
or emotional well-being under section 161.001(1)(E). In the Interest of D.J.J., No.
2-04-374-CV, 2005 WL 2472064, at *4 (Tex. App.—Fort Worth Oct. 6, 2005, no
pet.). The court noted that there was no evidence that the parent’s use of narcotics
created an environment that endangered the child’s physical or emotional well-being. 
Id. 
          Here, likewise, there is simply no evidence to support the majority’s surmise
that Vasquez’s use of marijuana for one week in November 2003 led to any negligent
supervision of Z.M. Moreover, the fact that a parent has failed to childproof her
home or, on one single occasion, placed her child “right by a tub in an infant carrier”
and left the child to answer a knock at the door is not evidence that the parent actually
endangered the child’s physical well-being. 
          The only pertinent evidence in regard to Z.M. about Vasquez’s narcotics use
is that Vazquez used marijuana for approximately one week in November 2003. 
There is absolutely no evidence in the record to support an inference that Vasquez
used marijuana in the presence of Z.M. or that Z.M. was even in Vasquez’s home at
anytime that she used marijuana that week. Thus, there is no evidence that Vasquez’s
use of marijuana constituted a real threat of injury or harm to Z.M. 
          Finally, it must be noted that section 161.001(1)(P) provides that a court may
order termination of the parent-child relationship if the court finds by clear and
convincing evidence that a parent has “used a controlled substance . . . in a manner
that endangered the health and safety” of a child and (1) “failed to complete a
court-ordered substance abuse treatment program,” or (2) “after completion of a
court-ordered substance abuse treatment program, continued to abuse a controlled
substance.” Tex. Fam. Code Ann. § 161.001(1)(P) (Vernon Supp. 2005) (emphasis
added). Subsection (1)(P) clearly provides for circumstances involving the use of
controlled substances in a manner that endangers the health and safety of children. 
The majority’s holding allows TDPRS to ignore subsection (1)(P)’s additional
requirement that it prove that a parent either failed to complete a court-ordered
substance abuse program or continued to abuse a controlled substance after
completing such a program. To require less proof for circumstances involving the use
of controlled substances under subsection (1)(E) renders subsection (1)(P)
meaningless.
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
Conclusion
          TDPRS did not present any evidence of any effect on Z.M. of Vasquez’s week-long use of marijuana in November 2003. In fact, it presented no evidence that Z.M.
was present, or even in the same home, when Vazquez relapsed. Moreover, there is
no evidence that Vasquez’s use of marijuana caused her to fail to childproof her home
or place Z.M. “right by a tub in an infant carrier” and leave Z.M. to answer a knock
at the door, or that this conduct constituted a real threat of injury or harm to Z.M. 
          The focus of subsection (1)(E) is clearly on conduct that actually endangers the
well-being of the child. Here, strict scrutiny of the record, with subsection (1)(E)
strictly construed in favor of Vasquez, readily reveals that there is no evidence to
support the trial court’s finding that Vasquez engaged in conduct which endangered
the physical or emotional well-being of Z.M. Accordingly, Vasquez’s first issue
should be sustained and the judgment should be reversed and rendered in her favor.
 
 
                                                                        Terry Jennings
                                                                        Justice
   
Panel consists of Justices Taft, Jennings, and Bland.
Justice Jennings, dissenting.