178 S.W.3d 424 (2005)
In the Interest of D.J.J., a Child.
No. 2-04-374-CV.
Court of Appeals of Texas, Fort Worth.
October 6, 2005.
*425 Boswell & Moore, P.C., Dawn A. Moore, Denton, TX, for appellant.
Office of General Counsel, Duke Hooten, appellate Atty., Texas Department of Family and Protective Services, Gerry Williams, General Counsel, Johnnie Beth Page, Director of Program Litigation, Austin, TX, for appellee.
*426 PANEL A: CAYCE, C.J.; WALKER and McCOY, JJ.

OPINION
JOHN CAYCE, Chief Justice.
Appellant Kevin J. appeals from the trial court's order terminating his parental rights in his child, D.J.J. In twenty points, Kevin challenges the legal and factual sufficiency of the evidence to support the trial court's termination order, challenges the constitutionality of Texas Rule of Civil Procedure 324(b)(2), and complains that his trial counsel was ineffective. We reverse and remand.
Kevin has never seen or lived with D.J.J. He was arrested for multiple drug possession offenses before D.J.J. was born and was still in jail when four-month-old D.J.J. was removed from his mother, Misty Z., due to her drug use.[1] At the time of trial, Kevin was serving four concurrent five-year sentences for drug possession and evading arrest. He admitted that his incarceration was his own fault.
After a jury trial, the jury found that termination of Kevin's parental rights would be in D.J.J.'s best interest,[2] and Kevin's parental rights were terminated on the following grounds:
1. He voluntarily left D.J.J. alone or in the possession of another without providing adequate support for the child and remained away for a period of at least six months;
2. He knowingly placed or allowed D.J.J. to remain in conditions or surroundings that endangered D.J.J.'s physical or emotional well being;
3. He engaged in conduct or knowingly placed D.J.J. with persons who engaged in conduct that endangered D.J.J.'s physical or emotional well being;
4. He failed to support D.J.J. in accordance with his ability for one year;
5. He constructively abandoned D.J.J.;
6. He failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of D.J.J.;
7. He used a controlled substance in a manner that endangered D.J.J.'s health or safety and (1) failed to complete a court-ordered substance abuse treatment program or (2) after completion of the program continued to abuse a controlled substance;
8. He knowingly engaged in criminal conduct that has resulted in his conviction of an offense and his confinement or imprisonment and his inability to care for D.J.J. for not less than two years from the date of filing the petition for termination.[3]
In his first eighteen points, Kevin challenges the legal and factual sufficiency of the evidence to support the grounds for termination and the best interest finding.
Following a jury trial, legal sufficiency challenges must be preserved in the trial court through one of the following procedural steps: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a *427 motion for new trial.[4] Challenges to the factual sufficiency of the evidence must be raised in a motion for new trial.[5] It is undisputed that Kevin did not do any of these things. Therefore, Kevin's legal and factual sufficiency challenges are waived on appeal. We overrule Kevin's first through eighteenth points.
In his twentieth point, Kevin complains that his trial counsel was ineffective for failing to preserve his legal and factual sufficiency points in a motion for new trial.
In Texas, indigent parents such as Kevin have a statutory right to effective assistance of counsel in parental rights termination cases.[6] To establish ineffective assistance, the appellant must first show that counsel's performance was deficient.[7] Second, the appellant must show that the deficient performance prejudiced his case.[8]
In determining whether counsel's performance in a particular case is deficient, we must take into account all the circumstances surrounding the case and must focus primarily on whether counsel performed in a reasonably effective manner.[9] It is only when the conduct was so outrageous that no competent attorney would have engaged in it that the challenged conduct will constitute ineffective assistance.[10]
Not every failure to preserve evidentiary challenges for appellate review rises to the level of ineffective assistance.[11] Rather, we must indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's decision was based on strategy, or even that counsel, in his professional opinion, believed the evidence factually sufficient so that a motion for new trial was not warranted.[12] Thus, if the evidence is legally and factually sufficient to support one of the grounds for termination and to prove that termination is in D.J.J.'s best interest, Kevin received effective assistance of counsel.
In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.[13] Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.[14]
*428 Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence.[15] This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.[16] It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[17]
Under the traditional no-evidence standard, a legal sufficiency challenge may be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact.[18] In parental rights termination cases, anything more than a scintilla is legally sufficient if "a factfinder could reasonably form a firm belief or conviction" that the grounds for termination were proven.[19] In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.[20]
We now turn to the grounds for termination. The Department[21] argues that the evidence is legally and factually sufficient to support termination on the eighth ground found by the jury  that Kevin knowingly engaged in criminal conduct that has resulted in his conviction for an offense and his confinement or imprisonment and inability to care for D.J.J. for not less than two years from the date of filing the petition for termination.[22] Kevin admits that he received four concurrent five-year prison sentences for drug possession and evading arrest, but he contends that there is no evidence he will still be incarcerated two years after the date the petition for termination was filed.
The Texas Supreme Court has held that the phrase "not less than two years from the date of filing the petition" applies prospectively.[23] Thus, to support termination on this ground, the Department was required to prove that Kevin's criminal convictions would result in his confinement for at least two years from the date the *429 petition was filed.[24]
In this case, it is undisputed that the Department petitioned to terminate Kevin's parental rights on January 29, 2004 and that two years from the date of filing the petition will be January 29, 2006. It is also undisputed that there is no evidence regarding when Kevin will be released from prison. Mary Wolfe, the Child Protective Services case worker, testified, "[W]e don't know when his release date is." Because there is no evidence that Kevin's convictions will result in his confinement for not less than two years from the date the petition was filed, the evidence is legally insufficient to support termination on this ground.[25]
Further, there is no evidence to support the first, fourth, or fifth grounds for termination  that Kevin voluntarily left D.J.J. alone or in the possession of another for at least six months without providing adequate support; that Kevin failed to support D.J.J. in accordance with his ability; or that he constructively abandoned D.J.J.[26] Kevin's separation from D.J.J. was not voluntary because he was incarcerated before D.J.J. was born. Further, there is no evidence that Kevin had any means of providing support for D.J.J. or that D.J.J. lacked anything. Instead, the evidence shows that, at the time he was removed from Misty's care, D.J.J. was developmentally on target, "happy, spoiled," and well fed. In addition, the CPS caseworker admitted that no efforts, apart from setting up a service plan, were made to reunite Kevin and D.J.J.[27] Accordingly, the evidence is legally insufficient to support termination on these grounds.
Likewise, there is no evidence to support the second and third grounds  that Kevin knowingly placed or allowed D.J.J. to remain in conditions or surroundings that endangered D.J.J.'s physical or emotional well being or engaged in conduct or knowingly placed D.J.J. with persons who engaged in conduct that endangered D.J.J.'s physical or emotional well being.[28]
The phrase "conditions or surroundings" in section 161.001(1)(D) refers only to the acceptability of the child's living conditions and does not concern the conduct of the parents toward the children.[29] Section 161.001(1)(E), on the other hand, requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act.[30]
Wolfe testified that D.J.J. was removed from Misty's care because of her drug use, something Misty candidly acknowledged at trial. In addition, six months before D.J.J.'s birth, Kevin was arrested  and later *430 imprisoned  on three drug possession charges. But there is no evidence that either Kevin's or Misty's drug use created an environment that endangered D.J.J.'s physical or emotional well being.
When he was removed from Misty's care, D.J.J. was well cared for and had been receiving proper medical care. Further, a police officer called to Misty's home just prior to the removal found no drug paraphernalia or other evidence of criminal activity, determined that D.J.J. "looked fine," and told a CPS caseworker, who was also present, to leave.
Misty acknowledged that using drugs was "extremely dangerous" for D.J.J. and that she did not provide a safe environment for him and was unable to take proper care of him when she was abusing drugs. Neither she nor Wolfe, however, could give any examples of how Misty's drug use threatened D.J.J.'s physical or emotional well being. Misty denied using drugs when she conceived or was pregnant with D.J.J., and Wolfe testified that D.J.J. had no exposure to drugs or alcohol. Wolfe also testified that she never saw any evidence of abuse.
Finally, there is no evidence that Kevin's conduct in taking the methamphetamines that resulted in his arrest and imprisonment endangered D.J.J.'s physical or emotional well being. Mere imprisonment, alone, is not conduct endangering a child.[31] Moreover, Wolfe testified that the Department was not seeking termination based on Kevin's incarceration. Accordingly, we hold that the evidence is legally insufficient to support termination on either of these grounds.
For these same reasons, the evidence is legally insufficient to support termination on the seventh ground  that Kevin used a controlled substance in a manner that endangered D.J.J.'s health and safety and failed to complete a court-ordered substance abuse treatment program or, after completion, continued the drug abuse.[32] Not only did Kevin's substance abuse not endanger D.J.J.'s health and safety, but Kevin also, on his own initiative, successfully completed a thirty-hour substance abuse program while he was in prison, and he had joined and was participating in Narcotics Anonymous (NA).
Finally, we turn to the sixth ground for termination  that Kevin failed to comply with his service plan that established the actions necessary for him to obtain the return of D.J.J.[33]
Wolfe testified that Kevin's service plan required him to take a psychological evaluation and a drug assessment, notify the Department if he was transferred, complete parenting classes, develop a relationship with D.J.J. by sending him weekly letters through the Department, complete individual counseling, refrain from any and all criminal activity, submit to random drug testing, and attend AA and NA at least three times a week. Wolfe further testified, however, that while Kevin was incarcerated the Department only expected him to write weekly letters to D.J.J., contact the Department to find out about D.J.J.'s welfare, and attend AA or NA if those programs were available in the prison facility where Kevin was housed. According *431 to Wolfe, the remaining services were unavailable to Kevin while he was incarcerated, so the Department did not expect him to comply with those requirements until after his release.
Wolfe testified that the Department had not received any letters from Kevin to D.J.J. and that Kevin had never contacted the Department to inquire about D.J.J.'s welfare. Kevin admitted that he had not written to D.J.J. once a week, as required by his service plan, but said he had written D.J.J. occasionally and sent those letters to D.J.J. through Misty. One letter, which Kevin testified he had written about three months before the termination trial, was admitted into evidence. Further, Misty testified that she had tried, unsuccessfully, to take D.J.J. to visit Kevin in jail before his convictions and that Kevin had several photographs of D.J.J.
Moreover, Wolfe acknowledged that Kevin had, while incarcerated, successfully completed a substance abuse counseling program in November 2003  two months before the Department had prepared Kevin's service plan. In addition, while Kevin had no access to most of the classes required by his service plan, he testified that he took every class that was available to him. Besides the substance abuse program, Kevin had successfully completed an anger/stress management course, obtained his GED, and had joined and was participating in NA and planned to continue in NA after his release. Also, Kevin testified that, at the time of trial, he was enrolled in a life skills class, was in the sixth week of a four-to-five-month vocational electrician training course, and had enrolled in Project Rio, a program that helps ex-offenders obtain jobs once they are released from prison. Kevin testified that he was doing these things so that he would have a way to support his family once he got out of prison.
Wolfe acknowledged that Kevin was doing what the Department would want an incarcerated parent to do by taking advantage of anything available to improve himself. Wolfe further testified that Kevin was cooperative when asked to sign an authorization to furnish the Department information  even though he knew the information obtained could be adverse to him  and when asked to sign his service plan. Finally, Wolfe conceded, that, outside of her initial meeting with Kevin in January 2004 to set up his service plan, neither she nor any other CPS employee had never attempted to contact Kevin again to help him comply with the plan  even though she knew which correctional facilities he was in. Indeed, Wolfe testified that Kevin "really didn't have a chance" to comply with his service plan, and she admitted that, by January 2004, it was "pretty much" the Department's plan to terminate both Misty's and Kevin's parental rights to D.J.J.
Even when viewed in the light most favorable to the jury's finding, this evidence is insufficient to allow a factfinder to reasonably form a firm belief or conviction that Kevin had failed to comply with his service plan.[34] The mere fact that Kevin had not written weekly letters to D.J.J., who was only twenty months old at the time of trial, is not, alone, legally sufficient to support this ground for termination by clear and convincing evidence.[35]
Because the evidence is legally insufficient to support any of the Department's grounds for terminating Kevin's parental rights in D.J.J., we cannot presume that trial counsel's failure to preserve Kevin's *432 legal sufficiency complaints in a motion for new trial was based on sound strategy or reasonable professional opinion.[36] To the contrary, we can only conclude that counsel's performance was deficient.[37] Although counsel did not learn of Kevin's desire to appeal the termination order until shortly before the filing deadline, "filing such a motion is not a difficult task."[38]
Having determined that trial counsel's performance was deficient, we must also decide whether the defective performance caused harm; in other words, we must decide whether "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different."[39] We must conduct our harm analysis as if the motion for new trial had been filed.[40]
In this case, if trial counsel had properly preserved Kevin's legal sufficiency complaints in a motion for new trial, the outcome of the proceeding would, indeed, have been different  Kevin would be entitled to a new trial in light of the legal sufficiency of the evidence to support termination.[41] Therefore, we hold that Kevin's trial counsel was ineffective.[42] We sustain Kevin's twentieth point.[43]
Having sustained Kevin's ineffective assistance complaint, we reverse the trial court's order of termination as to Kevin and remand the cause for a new trial.[44]
NOTES
[1] Misty's parental rights in D.J.J. were also terminated in the underlying proceeding; however, we dismissed her appeal for want of jurisdiction. See In re K.M.Z., No. 02-04-00374-CV, 2005 WL 182958, 178 S.W.3d 432, (Tex.App.-Fort Worth Jan. 27, 2005, no pet.).
[2] See TEX. FAM.CODE ANN. § 161.001(2) (Vernon 2002).
[3] See id. § 161.001(C), (D), (E), (F), (N), (O), (P), (Q).
[4] T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 220-21 (Tex.1992); Cecil v. Smith, 804 S.W.2d 509, 510-11 (Tex.1991).
[5] TEX.R. CIV. P. 324(b)(2); Cecil, 804 S.W.2d at 510.
[6] TEX. FAM.CODE ANN. § 107.013(a)(1) (Vernon Supp.2004-05), § 263.405(e) (Vernon 2002); In re M.S., 115 S.W.3d 534, 544 (Tex.2003).
[7] M.S., 115 S.W.3d at 545.
[8] Id.
[9] Id.
[10] Id.
[11] Id. at 549.
[12] See id. at 549-50 (stating that appellate court should find failure to file motion for new trial is ineffective assistance of counsel only when "the evidence to support termination was factually insufficient, and ... counsel's failure to preserve a factual sufficiency complaint was unjustified and fell below being objectively reasonable").
[13] TEX. FAM.CODE ANN. § 161.001; Richardson v. Green, 677 S.W.2d 497, 499 (Tex.1984); Swate v. Swate, 72 S.W.3d 763, 766 (Tex.App.-Waco 2002, pet. denied).
[14] Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987).
[15] TEX. FAM.CODE ANN. §§ 161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 847 (Tex.1980).
[16] G.M., 596 S.W.2d at 847; In re D.T., 34 S.W.3d 625, 630 (Tex.App.-Fort Worth 2000, pet. denied).
[17] TEX. FAM.CODE ANN. § 101.007 (Vernon 2002).
[18] Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.1998), cert. denied, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 TEX. L. REV. 361, 362-63 (1960).
[19] In re J.F.C., 96 S.W.3d 256, 265 (Tex. 2002); see also Romero v. KPH Consolidation, Inc., 166 S.W.3d 212, 220 (Tex.2005); S.W. Bell Tel. Co. v. Garza, 164 S.W.3d 607, 622, 625 (Tex.2004).
[20] City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex.2005).
[21] The Texas Department of Family and Protective Services.
[22] See TEX. FAM.CODE ANN. § 161.001(1)(Q).
[23] In re A.V., 113 S.W.3d 355, 359-60 (Tex. 2003).
[24] In re D.R.L.M., 84 S.W.3d 281, 295 (Tex. App.-Fort Worth 2002, pet. denied); accord In re R.F., 89 S.W.3d 258, 260 (Tex.App.-Corpus Christi 2002, no pet.); In re B.M.R., 84 S.W.3d 814, 817-18 (Tex.App.-Houston [1st Dist.] 2002, no pet.). In A.V. the supreme court did not hold, as the Department contends, that the evidence is sufficient to establish the two-year requirement if a parent is sentenced to serve at least two years. The sufficiency of the evidence was not challenged in A.V., and the father's projected release date from prison was more than two years after the termination petition was filed. See A.V., 113 S.W.3d at 357, 362.
[25] See TEX. FAM.CODE ANN. § 161.001(1)(Q).
[26] See id. § 161.001(1)(C), (F), (N).
[27] See id. § 161.001(1)(N)(i).
[28] See id. § 161.001(1)(D)-(E).
[29] Rodriguez v. Tex. Dep't of Human Servs., 737 S.W.2d 25, 27 (Tex.App.-El Paso 1987, no writ), disapproved on other grounds, In re J.F.C., 96 S.W.3d 256 (Tex.2002); In re S.H.A., 728 S.W.2d 73, 84 (Tex.App.-Dallas 1987, writ ref'd n.r.e.).
[30] In re D.M., 58 S.W.3d 801, 811-12 (Tex. App.-Fort Worth 2001, no pet.).
[31] Boyd, 727 S.W.2d at 533; In re S.D.H., 591 S.W.2d 637, 638 (Tex.Civ.App.-Eastland 1979, no writ).
[32] See TEX. FAM.CODE ANN. § 161.001(1)(P).
[33] See id. § 161.001(1)(O). Apparently, the service plan is the only court order with which Kevin was required to comply. Wolfe could not recall whether Kevin had been ordered to pay child support, nor did she know whether a parent is ordinarily required to pay child support while incarcerated.
[34] See J.F.C., 96 S.W.3d at 265-66.
[35] TEX. FAM.CODE ANN. §§ 161.001, 161.206(a); G.M., 596 S.W.2d at 847.
[36] See M.S., 115 S.W.3d at 549.
[37] See id. at 545.
[38] Id. at 549.
[39] Id. at 549-50 (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex.Crim.App.2001), cert. denied, 537 U.S. 1195, 123 S.Ct. 1351, 154 L.Ed.2d 1030 (2003)).
[40] See id. at 550.
[41] Id.; see also Horrocks v. Tex. Dep't of Transp., 852 S.W.2d 498, 498-99 (Tex.1993) (holding that, if appellant preserves legal sufficiency complaint in motion for new trial, new trial is all the relief appellate court can give because that is all the relief appellant requested in trial court).
[42] M.S., 115 S.W.3d at 550.
[43] In light of our disposition of this point, we need not address Kevin's factual sufficiency challenges or his nineteenth point, in which he challenges the constitutionality of procedural rule 324(b)(2) as applied to termination proceedings. See TEX.R.APP. P. 47.1. Rule 324(b)(2) provides that a motion for new trial is a prerequisite only to a factual sufficiency complaint following a jury trial. TEX.R. CIV. P. 324(b)(2).
[44] See M.S., 115 S.W.3d at 550.