*57 OPINION ON REHEARING
Appellants have filed motions for rehearing in which they each contend that this Court should address them legal and factual insufficiency complaints challenging two of the four predicate grounds for termination of them parental rights because, even if the outcome of this appeal remains unchanged, collateral consequences may attach to the adverse findings which they challenge. We will grant rehearing and address the merits of these complaints. Nevertheless, our initial decision to affirm the judgment will not change.
Death of Party
After filing the motion for rehearing, counsel for Appellant “Charles” filed a motion to dismiss because of Charles’s recent death. Counsel cites Olson v. Commission for Lawyer Discipline, 901 S.W.2d 520 (Tex.App.-El Paso 1995, no writ), for the proposition that the appeal is now moot because there are no property rights at stake. According to Olson, a civil appeal is rendered moot by the death of a party unless “the judgment affected the parties’ property rights, as opposed to purely personal rights.” Id. at 523-24; accord Casillas v. Cano, 79 S.W.3d 587, 591-92 (Tex.App.-Corpus Christi 2002, no pet.).
In this appeal, however, the judgment does affect property rights. If it were determined that the termination decree should be reversed, then the parent-child relationship between Charles and his daughter would be restored, and she would potentially be entitled to a share of his estate. Accordingly, the appeal has not been rendered moot by Charles’s death. See Dunn v. Dunn, 439 S.W.2d 830, 834 (Tex.1969); Verret v. Verret, 570 S.W.2d 138, 140 (Tex.Civ.App.-Houston [1st Dist.] 1978, no writ).
But while the appeal as a whole has not been rendered moot, the relief sought in the motion for rehearing filed on Charles’s behalf will not change the outcome. Accordingly, we grant counsel’s motion to dismiss insofar as counsel requests dismissal of the motion for rehearing as moot.
Breadth of Opinion
The current appellate rules are written to discourage appellate courts from addressing much beyond what is “necessary” in opinions. There are a number of practical and historical reasons for this emphasis on shorter opinions. But here we consider whether and when an appellate court’s opinion should address more than that which is minimally “necessary” to resolve the appeal.
Rule of Appellate Procedure 47.1 addresses the scope of appellate court opinions, providing, “The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.” Tex.R.App. P. 47.1; see also Tex. Disposal Sys., Inc. v. Perez, 80 S.W.3d 593, 594 (Tex.2002) (per curiam). This is not a new standard. See Tex.R.App. P. 90(a), 707-708 S.W.2d (Tex.Cases) lxxxv (Tex.1986, amended 1997);[1] Tex.R. Civ. P. 452(a), 629-630 S.W.2d (Tex. *58 Cases) xli (Tex.1982, repealed 1986);[2] Lone Star Gas Co. v. R.R. Comm’n of Tex., 767 S.W.2d 709, 710 (Tex.1989) (per curiam); see also El Campo Ice, Light & Water Co. v. Tex. Mach. & Supply Co., 147 S.W. 338, 340 (Tex.Civ.App.-Dallas 1912, writ denied) (declining to address additional points which would not affect disposition); Worcester v. Galveston, Harrisburg & San Antonio Ry., 91 S.W. 339, 343-44 (Tex.Civ.App.-San Antonio 1905, no writ) (op. on reh’g) (same).
An initial issue presented in Nancy’s motion for rehearing is whether an appellate court may address additional issues which have been properly raised and presented but which are not “necessary” to the final disposition of the appeal. The short answer is yes. See, e.g., Edinburgh Hosp. Auth. v. Trevino, 941 S.W.2d 76, 81 (Tex.1997) (addressing issue not essential to disposition of appeal to provide trial court with guidance on retrial); Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex.1996) (appellate court may consider summary-judgment grounds “that the movant preserved for review and trial court did not rule on in the interest of judicial economy”); FFP Mktg. Co. v. Long Lane Master Trust IV, 169 S.W.3d 402, 411 (Tex.App.-Fort Worth 2005, no pet.) (addressing additional issue “in the interest of judicial economy”); In re J.B., 93 S.W.3d 609, 617 (Tex.App.-Waco 2002, pet. denied) (addressing additional issues likely to arise on retrial). But the more relevant question is when should an appellate court exercise its discretion to address additional issues.
With the 2002 amendments to the appellate rules came an increased emphasis on the brevity of appellate opinions. In 2002, the Supreme Court amended Rule of Appellate Procedure 47.4 to govern the issuance of “brief memorandum opinion[s]” in lieu of the predecessor rule which governed when opinions should be[3] Compare Tex.R.App. P. 47.4 with Tex.R.App. P. 47.4, 948-949 S.W.2d (Tex.Cases) cxxx (Tex.1997, amended 2002). Under current Rule 47.4:
An opinion must be designated a memorandum opinion unless it does any of the following:
(a) establishes a new rule of law, alters or modifies an existing rule, or *59 applies an existing rule to a novel fact situation likely to recur in future cases;
(b) involves issues of constitutional law or other legal issues important to the jurisprudence of Texas;
(c) criticizes existing law; or
(d) resolves an apparent conflict of authority.[4]
Tex.R.App. P. 47.4 (emphasis added).
The increased emphasis on brevity was driven primarily by the Texas Legislature. See Appellate Court PERFORMANCE Measures Subcomm., Judicial Performance Measures Comm., Tex Judicial Council, Performance Measures: Texas Courts of Appeals 9 (2000), http://www.courts.state. tx.us/tjc/publications/ Perf_Measure/COA/Final_Report.pdf. In 1999, the 76th Legislature directed the Texas Judicial Council to:
develop measures which evaluate the work of individual justices on the courts of appeals. The measures developed by the Texas Judicial Council must be approved by the Legislative Budget Board and the Governor’s Office. The data obtained for these measures will be reported in the Texas Judicial System Annual Report.
Act of May 26, 1999, 76th Leg., R.S., ch. 1589, art. IV, § 1, 1999 Tex. Gen. Laws 5446, 5938.
In response to this legislative directive, the Texas Judicial Council created a Committee on Judicial Performance Measures which charged its own Subcommittee on Appellate Court Performance Measures “to make recommendations to the Committee and to the full Council as to the best means for complying with the rider.” Performance Measures Subcomm., Performance Measures at 9. After surveying the justices of the intermediate appellate courts and gathering data from the other states, the Subcommittee identified several factors which make it impractical and imprudent to establish performance measures for individual justices. See id. at 13-15. Instead, the Subcommittee made the following recommendations:
(1) The current performance measures that were developed by the courts of appeals, the Legislative Budget Board (LBB), and the Governor’s Office of Budget and Planning should continue to be used for caseload management by each court in accordance with uniform data reporting standards approved by the courts of appeals. Through the Council of Chief Justices’ Committee on Docket Equalization and Performance Measures, the courts of appeals should continue to ensure that there is uniform reporting of these measures.
(2) While the development of accurate and reliable quantitative measures to evaluate the performance of individual court of appeals justices is not practicable, the courts of appeals should continuously find ways to operate efficiently without sacrificing the quality of justice while remaining true to the rule of law.[5] *60 (3) The Office of Court Administration, with input and guidance from the courts of appeals, should continue to study whether the statistical data currently reported and published is presented in a clear, understandable format and what, if any, additional data should be collected.
Id. at 28-31 (footnote added).
In addition to a legislatively mandated quest for efficiency, an important limiting factor which must guide an appellate court’s determination of which “additional” issues to address, if any, is the constitutional prohibition against issuance of advisory opinions. Article II, section 1 of the Texas Constitution provides for the separation of governmental powers among the three branches of government. Tex. Const. art. II, § 1. The Supreme Court has construed this provision in part as prohibiting courts “from issuing advisory opinions that decide abstract questions of law without binding the parties, as that is a function of the executive rather than the judicial branch.” S. Tex. Water Auth. v. Lomas, 223 S.W.3d 304, 307 (Tex.2007).
Finally, there is the settled principle that courts should exercise restraint when deciding cases. “[T]he cardinal principle of judicial restraint — if it is not necessary to decide more, it is necessary not to decide more — counsels us to go no further.” VanDevender v. Woods, 222 S.W.3d 430, 433 (Tex.2007) (quoting PDK Labs., Inc. v. U.S. Drug Enforcement Admin., 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring)).
Balancing Restrictions with Rights
In defining what “additional issues” should be addressed in an appellate opinion, we must balance a need to exercise judicial restraint and the foregoing limitations on our authority with the rights of the litigants. As a matter of due process, a parent appealing from a termination decree has a right to meaningful appellate review. See In re D.M., 244 S.W.3d 397, 413 (Tex.App.-Waco 2007, no pet.). A child in a termination proceeding shares her parent’s interest in preventing the erroneous termination of the parent-child relationship until parental unfitness is established. In re M.S., 115 S.W.3d 534, 547-48 (Tex.2003); D.M., 244 S.W.3d at 409 & n. 7. “[T]he State shares the parent’s interest in an accurate and just decision.” In re B.L.D., 113 S.W.3d 340, 353 (Tex.2003); accord D.M., 244 S.W.3d at 412. And the State has an interest in the prompt resolution of a termination proceeding. See M.S., 115 S.W.3d at 548; D.M., 244 S.W.3d at 412 & n. 10. Undoubtedly, parent and child share this interest as well.
Here, Nancy contends that the evidence is factually insufficient to support the court’s findings that: (1) she knowingly placed or allowed S.N. to remain in dangerous conditions or surroundings; and (2) she engaged in conduct or knowingly placed S.N. with persons who engaged in conduct which endangered the child. See Tex. Fam.Code Ann. § 161.001(1)(D), (E) (Vernon Supp.2008). On rehearing, she notes that an affirmative finding on either of these grounds could be used to support termination of her parental rights with respect to any future child she may have. Id. § 161.001(1)(M) (Vernon Supp.2008).
Similar to criminal cases, this may be classified as a “collateral consequence” of *61 the court’s affirmative findings on these predicate grounds. Cf. Scott v. State, 55 S.W.3d 593, 597 (Tex.Crim.App.2001) (“[t]he resolution of criminal charges will always carry the possibility of collateral consequences”); In re E.M.N., 221 S.W.3d 815, 825 n. 13 (Tex.App.-Fort Worth 2007, no pet.) (termination of parental rights was collateral consequence of mother’s conviction for murder of child’s father). A criminal defendant may challenge such collateral consequences in a habeas application. Tex.Code Crim. Proc. Ann. art. 11.07, § 3(c) (Vernon Supp.2008); see Lebo v. State, 90 S.W.3d 324, 327 n. 8 (Tex.Crim.App.2002); Ex parte Hargett, 819 S.W.2d 866, 867 (Tex.Crim.App.1991); In re Altschul, 207 S.W.3d 427, 429 (Tex.App.-Waco 2006, pet. ref'd).
However, a person whose parental rights have been terminated must file any collateral attack on the termination decree within six months after the decree is signed. See Tex. Fam.Code Ann. § 161.211 (Vernon 2002); B.L.D., 113 S.W.3d at 353. But cf. Tex. Const. art. I, § 12 (“The writ of habeas corpus is a writ of right, and shall never be suspended.”); see Foster v. Foster, 230 S.W. 1064, 1064-65 (Tex.Civ.App.-Galveston 1921, writ dism’d) (district court has authority to grant habeas relief by modifying custody determination rendered in a different district court); see also Legate v. Legate, 87 Tex. 248, 28 S.W. 281, 282 (1894) (district court has jurisdiction to grant habeas relief in child custody matter).
According to section 161.211, Nancy has no available legal remedy to challenge the collateral consequences flowing from the termination decree. Because of this, any failure on our part to address the merits of her complaint regarding the two predicate grounds for termination at issue effectively deprives her of the “meaningful appellate review” to which she is entitled as a matter of due process. See D.M., 244 S.W.3d at 413.
Nevertheless, the attorney ad litem and the State contend that any further review in this case is contrary to S.N.’s best interest and the State’s interest in providing her a stable, permanent home. We do not disagree that these are important considerations. In the context of this case, however, we hold that Nancy’s right to meaningful appellate review requires that we address the merits of her complaints.
Dangerous Conditions or Surroundings
Nancy contends in her first issue that the evidence is factually insufficient to prove that she knowingly placed or allowed S.N. to remain in dangerous conditions or surroundings.
The Department focuses on Nancy’s drug and alcohol abuse as the primary evidence supporting this finding. However, this predicate ground for termination is concerned with S.N.’s “conditions and surroundings” rather than Nancy’s “conduct.” [6] Compare Tex. Fam.Code Ann. § 161.001(1)(D) with Tex. Fam.Code Ann. § 161.001(1)(E); see In re S.K., 198 S.W.3d 899, 902 (Tex.App.-Dallas 2006, pet. denied); In re D.J.J., 178 S.W.3d 424, 429 (Tex.App.-Fort Worth 2005, no pet.).
The record contains conflicting evidence regarding Nancy’s abuse of drugs and alcohol. Nevertheless, the parties and the *62 court appear to have agreed that there is no evidence she used a controlled substance in S.N.’s presence. In addition, the limited evidence in the record regarding the home environment at the time of S.N.’s removal suggests that Nancy provided S.N. with adequate living conditions which did not endanger her physical or emotional well-being.
Therefore, we hold that the evidence is factually insufficient to sustain the jury’s finding that Nancy knowingly placed or allowed S.N. to remain in dangerous conditions or surroundings. See D.J.J., 178 S.W.3d at 429-30. Accordingly, we sustain Nancy’s first issue.
Nancy’s Conduct
Nancy contends in her second issue that the evidence is factually insufficient to prove that she engaged in conduct or knowingly placed S.N. with persons who engaged in conduct which endangered S.N.
Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child. See, e.g., In re C.R., 263 S.W.3d 368, at 371 (Tex.App.-Dallas 2008, no pet.); In re M.R., 243 S.W.3d 807, 818-19 (Tex.App.-Fort Worth 2007, no pet.); Toliver v. Tex. Dep’t of Family & Protective Servs., 217 S.W.3d 85, 98 (Tex.App.Houston [1st Dist.] 2006, no pet.).
Nancy’s substance abuse counselor stated in his consultation report, “[Nancy] has not made any behavioral changes due to her alcohol abuse. She requires substance abuse counseling in order to confront this issue.” Other witnesses testified that Nancy abused drugs and alcohol during the months leading up to trial. She also tested positive for methamphetamine on one occasion and admitted to a CPS investigator on a another occasion that she would have tested positive for cocaine and marihuana if she had been tested.
Conversely, Nancy denied using any illegal drugs within the past three years and denied that she has a drinking problem.
Although there is conflicting evidence on the issue, we hold that the evidence regarding Nancy’s history of substance abuse and her inability or unwillingness to admit she has this problem or try to address it is such that the jury could reasonably form a firm belief or conviction that she engaged in conduct which endangered S.N. See C.R., 263 S.W.3d 368, 2008 WL 1960816, at *5; M.R., 243 S.W.3d at 818-19; Toliver, 217 S.W.3d at 100-01; see also In re J.F.C., 96 S.W.3d 256, 266 (Tex.2002) (providing standard of review). Therefore, we overrule Nancy’s second issue.
Conclusion
We dismiss Charles’s motion for rehearing as moot due to his death. We grant Nancy’s motion for rehearing. Because we have overruled Nancy’s second issue, because she does not challenge two of the predicate grounds for termination found by the court, and because we have previously overruled Nancy’s third issue challenging the court’s best-interest finding, our prior decision affirming the trial court’s judgment remains undisturbed.
Chief Justice GRAY concurs in the judgment of the Court. A separate opinion will not follow. He provides the following note.*

. The pertinent language of former Rule 90(a) varies somewhat from the current rule. Rule 90(a) provided:
The court of appeals shall decide every substantial issue raised and necessary to disposition of the appeal and hand down a written opinion which shall be as brief as practicable. Where the issues are clearly settled, the court shall write a brief memorandum opinion which should not be published.
Tex.R.App. P. 90(a), 707-708 S.W.2d (Tex.Cases) lxxxv (Tex.1986, amended 1997).

. The Rules of Civil Procedure governed appellate proceedings until the adoption of the Rules of Appellate Procedure in 1986. See Jennifer Adams, Comment, Law Today; Gone Tomorrow, 53 Baylor L.Rev. 659, 663-65 (2001) (discussing development of procedural rules governing Texas appellate court opinions). Former Rule 452 provided, "Opinions of the courts of appeals shall be as brief as practicable and yet dispose of every substantial issue raised and necessary to disposition of the appeal. Where the issues are clearly settled, the court shall write only a brief memorandum opinion, which should not be published.” Tex.R. Civ. P. 452(a), 629-630 S.W.2d (Tex.Cases) xli (Tex.1982, repealed 1986).
The former Rule 451 provided more broadly that appellate courts should "decide all issues presented to them by proper assignments of error.” Id. 451, 4 Tex B.J. 557 (Tex.1941, amended 1983) (emphasis added). Rule 451 was amended in 1983 to conform with Rule 452. As amended Rule 451 provided, "The Court of Appeals shall decide all controlling issues presented by proper points or cross-points of error and announce its conclusions in a written opinion.” Id., 661-662 S.W.2d (Tex.Cases) cv (Tex. 1983, repealed 1986) (emphasis added).

. In addition to the emphasis on efficiency discussed in more detail herein, the 2002 amendments represented a trade-off of competing interests "to eliminate the increasingly frequent practice of designating Courts of Appeals opinions as DNP, Do Not Publish.” Chip Babcock, Texas Supreme Court Considers Abolishing Unpublished Opinions, Houston Lawyer, Sept.-Oct. 2001 at 22, 22; see also Pamela Stanton Baron, Texas Courts of Appeals Online, 66 Tex. B.J. 46, 46 (2003).

. These four grounds for not issuing a memorandum opinion are the same grounds which formerly determined whether an opinion should be published. See Tex.R.App. P. 47.4, 948-949 S.W.2d (Tex.Cases) cxxx (Tex.1997, amended 2002).

. It is arguable that Rule 47.4's emphasis on brief memorandum opinions is counterproductive in the stated quest for efficiency because it is often more difficult to distill the parties’ well-presented legal arguments to a few sentences than to provide a full discussion of the competing arguments and a reasoned explanation for the disposition. See Gonzalez v. McAllen Med. Ctr., Inc., 195 S.W.3d 680, 682 (Tex.2006) (per curiam) ("The plaintiffs here are entitled to a written opinion stating why the jury’s verdict can or cannot be set aside.”). The French mathematician and philosopher Blaise Pascal stated it *60 this way, "I have made this letter longer than usual, because I lack the time to make it short.” John Bartlett, Familiar Quotations 270 (Justin Kaplan, ed., Little, Brown & Co., 16th ed. 1992) (translating Pascal’s statement, "Je n'ai fait celle-ci plus longue parceque je n'ai pas eu le loisir de la faire plus courte.”).

. The Department argues that we should consider this issue and Nancy's second issue (which challenges the jury's finding that she engaged in conduct or knowingly placed S.N. with persons who engaged in conduct which endangered S.N.) together because these predicate grounds for termination are interrelated. See In re J.T.G., 121 S.W.3d 117, 126 (Tex.App.-Fort Worth 2003, no pet.). While we agree that these grounds are frequently interrelated, we do not find them to be so in this case.

 (The Court takes a wandering tour of one facet of judicial restraint in its first 10 pages that *63 explains why I was correct in my dissenting opinion on rehearing in Fagan v. Crittenden, 166 S.W.3d 748 (Tex.App.-Waco 2005, pet. denied) (Gray, C J., dissenting) when I argued that we had failed to address the issues that controlled the then existing rights of the parties with interest in real property and a right-of-way that crossed it. The Court, however, avoids any mention of Fagan in its Opinion on Rehearing. Maybe that is because, if they actually exercised the judicial restraint discussed in the Opinion on Rehearing in this case, there would be no reason for the opinion at all. The issues they address in the Opinion on Rehearing are potentially relevant if the appellant has another child, and if the State seeks to terminate her parental rights to that child, and if the predicate act discussed in the Opinion on Rehearing is the only basis for that attempted termination, and if the trial court, in that as yet un-filed case to terminate the parental rights to an as yet unborn or even conceived child, refused to allow the appellant to show that the ground upon which termination was being sought (remember this is all happening in the future) was not supported by sufficient evidence at the time the determination was made. It is difficult to imagine a more speculative reason for a determination that resolves no dispute that is relevant to the resolution of the dispute that exists between the parties to this proceeding. On the other hand, in the actual proceeding currently before us, the State cannot even challenge the Court's determination or its methodology of deciding this issue because a successful challenge to the Court's holding on the issue addressed in the Opinion on Rehearing would not change the judgment which the State seeks to affirm, termination of parental rights in this case. I would deny the motion for rehearing without an opinion and thus concur in the judgment of the Court to the extent, and only to the extent, that it affirms the judgment of the trial court.)