**Fourth Court of Appeals**
**San Antonio, Texas**


## DISSENTING OPINION

No. 04-19-00080-CV

**IN THE INTEREST OF G.M.**, a Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA00686
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice
Concurring Opinion by: Beth Watkins, Justice
Dissenting Opinion by: Rebeca C. Martinez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
            Rebeca C. Martinez, Justice
            Beth Watkins, Justice

Delivered and Filed: July 31, 2019

I respectfully dissent because I believe the Department failed to meet its burden of proving by clear and convincing evidence that termination of F.M.'s parental rights was in G.M.'s best interest.

### *The majority improperly relies on facts not in evidence*

To terminate parental rights, the Department must prove by "clear and convincing evidence" that the parent engaged in an act or omission listed in subsection 161.001(b)(1) and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b). "[I]f there is legally insufficient evidence" to support termination, we must render judgment in favor of the parent. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Due process demands this exacting standard. *See id.*; *see also In re J.E.M.M.*, 532 S.W.3d 874, 891 (Tex. App.—Houston [14th Dist.] 2017, no pet.)

("[D]ue process demands that the State document a sufficient measure of evidence in the record to support [parental termination].").

The majority improperly relies on a video not admitted into evidence and testimony excluded from the record as hearsay. Because this material is not in the record, it cannot be considered on review or support the trial court's termination order. *See* TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d at 263; *In re E.F.*, No. 04-18-00635-CV, 2019 WL 2194539, at *2 n.4 (Tex. App.—San Antonio May 22, 2019, no pet. h.) ("The only evidence that can support the trial court's [parental termination] order is that evidence admitted at trial.").[1]

The video from the shelter's surveillance camera was never admitted into evidence at trial. Accordingly, the video is not evidence—clear, convincing, or otherwise—able to support termination of F.M.'s parental rights. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re E.F.*, 2019 WL 2194539, at *2 n.4; *see also State Bar of Tex. v. Grossenbacher*, 781 S.W.2d 736, 738 (Tex. App.—San Antonio 1989, no writ) ("In order for evidence to be considered as proof in a case, it must be admitted at trial."). The State offered the video, and F.M. objected to its introduction. The trial court overruled the objection and watched the video. Critically, however, the trial court did not admit the video into evidence after watching it. *Cf. Grossenbacher*, 781 S.W.2d at 738 (determining stipulations filed with the trial court were not evidence because the stipulations were not admitted into evidence). We may not consider any evidence outside the record to support an implied finding of any alleged "excessive spanking." More importantly, the grounds for removal cannot alone support an order terminating parental rights. *See* TEX. FAM. CODE ANN. § 161.001(b);

---

[1] The trial court commented about F.M.'s progress based on prior hearings. This court may not rely on information presented in prior hearings because this information does not constitute evidence. *See In re E.F.*, 2019 WL 2194539, at *2 n.4. The trial court also purported to take judicial notice of pleadings, service of process documents, service plans, orders, and CASA reports. This court may not consider allegations in those documents because a trial court may not take judicial notice of allegations contained in those documents to support a parental-termination decision. *See id.* at *1 n.3.

*Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976) (stating both elements—(1) a predicate ground for removal and (2) that termination is in the best interest of the child—must be established to terminate a parent-child relationship).

F.M. also objected to the introduction of hearsay testimony about statements his girlfriend allegedly made to the Department caseworker. The caseworker began to testify about text messages she purportedly received from the girlfriend, but F.M. objected. The trial court sustained the objection, and the caseworker did not testify about the content of those text messages. Accordingly, the content of the text messages is not evidence. *See EZ Auto, L.L.C. v. H.M. Jr. Auto Sales*, No. 04-01-00820-CV, 2002 WL 1758315, at *4 (Tex. App.—San Antonio July 31, 2002, no pet.) (determining testimony was not evidence and not considering the testimony in a sufficiency review because the trial court sustained an objection to the testimony); *see also In re D.J.J.*, 178 S.W.3d 424, 428 (Tex. App.—Fort Worth 2005, no pet.) (explaining that an appellate court may sustain a no-evidence legal sufficiency challenge when the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact). Later at trial, the caseworker testified that F.M. was receiving therapy, but the caseworker believed the therapy to be insufficient. The caseworker stated: "Most important are his aggressive behaviors towards his girlfriend that she's reported to me. And I've asked the therapist to address those." In sum, the testimony in evidence is that F.M.'s girlfriend reported to the caseworker F.M.'s "aggressive behaviors." The majority improperly ascribes content to the girlfriend's text messages when the majority describes the caseworker's vague testimony about "aggressive behaviors" as evidence that "F.M.'s girlfriend continues to report to the caseworker that F.M. is abusive to her," and that F.M.'s "girlfriend reported ongoing abuse." There is no admitted testimony that the girlfriend made specific allegations of abuse to the caseworker.

***The evidence is legally insufficient to show that termination of F.M.'s parental rights is in G.M.'s best interest***

The evidence in the record does not support the conclusion that termination of F.M.'s parental rights is in G.M.'s best interest.

There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). "Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence." *In re D.J.J.*, 178 S.W.3d at 428; *see also* TEX. FAM. CODE ANN. § 161.001(b). "Clear and convincing evidence" is the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007. In a legal sufficiency review, when the burden of proof is clear and convincing evidence, "a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* However, "[t]his does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence." *Id.* (emphasis in original).

In determining best interest, we consider the nonexclusive *Holley* factors. *See Holley*, 544 S.W.2d at 371–72. The absence of evidence about some factors does not preclude a factfinder

from reasonably forming a strong conviction that termination is in a child's best interest, particularly if the evidence is undisputed that the parental relationship endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Other cases "present more complex facts in which paltry evidence relevant to each consideration mentioned in *Holley* [does] not suffice to uphold the [factfinder's] finding that termination is required." *Id.*

Here, the evidence is paltry as to most of the *Holley* factors, and the totality of the evidence does not meet the clear-and-convincing standard required to form a firm belief or conviction that termination of F.M.'s parental rights is in G.M.'s best interest.

As the majority notes regarding *Holley* factor one, G.M. is too young to express his desires. It is paltry evidence of G.M.'s desires regarding termination that G.M. shows fear of his father because G.M. does not want the caseworker to report when he gets in trouble at school or has a bad grade.

As to *Holley* factor two regarding the child's unique needs, the caseworker testified that G.M. is in therapy to address his very aggressive behaviors and abuse of other children at school. As to *Holley* factor three regarding emotional and physical danger to the child, the evidence establishes—even without considering the surveillance video—that F.M. admitted to inappropriately disciplining G.M. by excessively spanking him. This evidence weighs in favor of termination.

On the opposite side of the scale is evidence relevant to *Holley* factors four and five. *Holley* factor four concerns parental ability, and *Holley* factor five concerns programs available to assist the parent to promote the child's best interest. When viewed in the light most favorable to the trial court's finding, the evidence establishes: (1) F.M. was enrolled in domestic violence classes and had completed seven of fourteen classes; (2) F.M. began parenting classes the week before trial;

and (3) F.M. began twice-a-month therapy sessions three months before trial. The caseworker testified she received positive reports from F.M.'s therapist, and F.M. and his therapist were discussing F.M.'s anger issues. The caseworker also testified that she had reported to the therapist F.M.'s "aggressive behaviors" toward his girlfriend, so that the therapist could work with F.M. on those issues. F.M. acknowledged the need to change his behavior toward his son and acknowledged that his use of excessive force in spanking G.M. negatively impacted G.M. *Holley* factors four and five weigh against termination because the evidence establishes: F.M. was enrolled in programs to address his anger and improve his parenting skills; F.M. desired to change his aggressive behavior; F.M. had made positive progress in therapy to address his anger issues; and F.M. would continue with therapy and domestic violence classes and would begin parenting classes.

*Holley* factor six concerns F.M.'s plan for G.M., and *Holley* factor seven concerns the stability of the home or proposed placement. These factors weigh in favor of termination because F.M. had indefinite plans for G.M., and F.M. proposed placement at an unstable home. This evidence could permit the trial court to determine that F.M. should not have custody of G.M.; however, I do not believe the testimony, either alone or in conjunction with other evidence, amounts to clear and convincing evidence that F.M. should have no relationship with his son. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting clear-and-convincing standard of proof for termination decisions with the preponderance-of-the evidence standard for conservatorship decisions); *see also In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) (reversing termination decision but affirming trial court's decision to award sole managing conservatorship to the Department).

*Holley* factor eight concerns whether the parent's acts or omissions may indicate that the existing parent-child relationship is improper. *Holley* factor nine concerns any excuses for the parent's acts or omissions. F.M. testified that he tested positive for marijuana; however, there is no evidence in the record that F.M. used drugs while with G.M. A Department monitor testified that F.M. became angry and yelled at her during a visit F.M. had with his son. The monitor also testified that G.M. was crying and shaking during the incident. F.M. explained he became angry when the monitor cursed at him and when the monitor pulled G.M.'s arm to remove him. The monitor did not contest this testimony. *See In re J.F.C.*, 96 S.W.3d at 266 (cautioning that disregarding undisputed facts "could skew the analysis" of whether parental termination is supported by clear and convincing evidence). The caseworker, who monitored subsequent visits, testified that F.M.'s behavior improved after the incident, and she testified that notes from F.M.'s therapist, who began treating F.M. the same week as the incident, were positive and reflected discussion between F.M. and his therapist about F.M.'s anger.

After considering the *Holley* factors and weighing only the evidence in the record, I would conclude the Department failed to meet its high burden to establish by clear and convincing evidence that termination of F.M.'s parental rights was in G.M.'s best interest. As the concurrence acknowledges, involuntary termination involves the fundamental liberty interests of parents in the care, control, and custody of their children that is "far more precious [] than property rights." *Stanley v. Illinois*, 405 U.S. 645, 652 (1972); *see also Troxel v. Granville*, 530 U.S. 57, 65 (2000). This case does not involve aggravated circumstances, such that the Department could avoid reasonable efforts to return G.M. to his father. *See* TEX. FAM. CODE ANN. § 262.2015 (providing that a court may waive the requirements of a service plan and the requirement to make reasonable efforts to return a child to a parent if the court finds aggravated circumstances, including that the

parent has engaged in conduct against the child that would constitute an offense of aggravated assault or injury to a child).  The Department's theory of the case was that F.M. excessively spanked G.M., as the Department proffered via the unadmitted surveillance video, and that F.M. had not learned to control his anger according to hearsay reports from F.M.'s girlfriend and based on a visitation incident.  To find in favor of termination, a factfinder would have to speculate that F.M. was abusive to his girlfriend, disregard F.M.'s undisputed explanation that he became angry at the visitation because a Department worker pulled G.M.'s arm, and fill in with visual details the ambiguous phrase spanking with "excessive force."[2]  I disagree that the trial court reasonably could have formed a firm belief or conviction that termination was in G.M.'s best interest without making these errors, and I cannot make the distinction the concurrence does that the evidence is paltry but not too paltry to reverse.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 27.  For these reasons, I would reverse the portion of the trial court's judgment terminating F.M.'s parental rights to G.M. and render judgment denying the Department's petition for termination.  I would affirm the remainder of the trial court's order, including that portion of the order awarding sole managing conservatorship of G.M. to the Department.

Rebeca C. Martinez, Justice

---

[2] F.M. testified at trial that he spanked G.M. six times on his butt and back and acknowledged that he used "excessive force" in spanking G.M.  The Department's attorney argued, when offering to show the video at trial: "I don't think what the father testified to actually does the video justice in this case."