

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00177-CV

_____

IN THE INTEREST OF S.H., A CHILD

_____

On Appeal from the County Court at Law No. 2
Randall County, Texas
Trial Court No. 10909-L2, Honorable Jack M. Graham, Presiding

_____

September 16, 2015

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

W.W., the mother of S.H.,[1] appeals the trial court's order terminating her parental rights to her child. We will affirm the order of the trial court.

Background

S.H., male, was born in February 2014 to W.W.[2] In April 2014, the Texas Department of Family & Protective Services filed pleadings supporting the removal of

_____

[1] To protect the child's privacy, we will refer to the mother and the child by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2011); TEX. R. APP. P. 9.8(b).

[2] The parental rights of the father, L.F., were also terminated in this proceeding. He is not a party to this appeal. W.W. initially named another man as the father of S.H. Genetic testing determined L.F., not the named father, was the biological father.

S.H. from his mother's care. The allegations included drug tests showing both W.W. and S.H. had methamphetamine in their systems. The Department also alleged physical abuse and neglectful supervision of S.H. by W.W. due to her drug use and that of her parents, with whom she and the child were staying. The two-month-old S.H. was removed from W.W.'s care and at the time of the final hearing, S.H. was living with his maternal aunt and uncle.

The trial court held a final hearing in March 2015. After hearing the testimony of a Department investigator, a Department caseworker, and W.W., the trial court found clear and convincing evidence to support termination of W.W.'s parental rights to S.H.[3] and also determined there was clear and convincing evidence that termination of W.W.'s parental rights was in the child's best interests.[4] This appeal followed.

Analysis

By three issues, W.W. challenges the factual sufficiency of the evidence supporting the trial court's findings authorizing termination. Because the legal sufficiency of the evidence supporting the trial court's findings is unchallenged, we will limit our analysis to that of factual sufficiency.

The Constitution protects "[t]he fundamental liberty interest of natural parents in the care, custody, and management" of their children. *Santosky v. Kramer,* 455 U.S.

---

[3] The trial court found the evidence supported termination under Family Code sections 161.001(1)(D), (E), (N), (O), and (P). *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (N), (O), (P) (West 2014). We note the statute was amended after this case was heard to renumber the sections. The current relevant sections are TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P) (West 2015). *See* Act of April 2, 2015, 84th Leg., R.S., S.B. 219, art. 1, §1.078.

[4] *See* TEX. FAM. CODE ANN. § 161.001(2) (West 2014) (enacted April 2, 2015).

745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Parental rights, however, are not absolute, and courts have recognized it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve the parental rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re C.H.,* 89 S.W.3d at 25-26.

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.,* 89 S.W.3d at 25. We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

The Family Code permits a trial court to terminate parental rights if the Department proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(1) and termination is in the child's best interests. TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014); *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex. 1976). Only one predicate finding under section 161.001(1) is necessary to support an order of termination when there is also a finding that termination is in a child's best interests. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.,* 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.). Thus a termination order may be affirmed if it is supported by legally and factually sufficient evidence of any statutory ground on which the trial court relied for termination, and the best interest finding. *In re E.A.G.,* 373 S.W.3d 129, 141 (Tex. App.—San Antonio 2012, pet. denied). As noted, appellant does not challenge on appeal the legal sufficiency of the evidence to support the trial court's order of termination.

Subsection (E) of section 161.001(1) permits termination when clear and convincing evidence shows that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E). Within the context of section 161.001(1)(E), endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *In the Interest of K.C.F.,* No. 01-13-01078-CV, 2014 Tex. App. LEXIS 6131, at *32-34 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.) (citation omitted). Instead, "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *Id.; see In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996).

It is not necessary to establish that a parent intended to endanger a child in order to support termination of the parent-child relationship under subsection (E). *See In re M.C.,* 917 S.W.2d at 270. However, termination under subsection 161.001(1)(E) requires "more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required." *In re J.T.G.,* 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987); *In re R.W.,* 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).

The statute does not require that conduct be directed at a child or cause actual harm; rather, it is sufficient if the parent's course of conduct endangers the well-being of the children. *Walker v. Tex. Dep't of Family & Protective Servs.,* 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Furthermore, the conduct does not have to occur in the presence of the child. *Id.* The conduct may occur before the child's birth and both before and after the child has been removed by the Department. *Id.* A parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize a child's present or future physical or emotional well-being. *In re D.M.,* 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).

The main concern in this case is W.W.'s long history of drug use. W.W. began using methamphetamine during her teen years. At the time of the final hearing, she was almost 29 years old. While she had completed some rehabilitation programs, she continued to use drugs and tested positive for methamphetamine and marijuana during

a prior Department investigation involving another child.[5] And, in March 2014, both she and S.H. tested positive for methamphetamine. A Department investigator testified the positive drug test was the reason for S.H.'s removal from W.W.'s care. W.W. told the court she did not have an explanation for S.H.'s positive drug screen and denied using methamphetamine around the child. But the trial court could have concluded from the evidence of W.W.'s use of methamphetamine and S.H.'s positive drug test that the child had been exposed to the drug via methamphetamine use in the home. *See In re H.D.,* No. 01-12-00007-CV, 2013 Tex. App. LEXIS 5699 (Tex. App.—Houston [1st Dist.] May 9, 2013, no pet.) (affirming judgment terminating mother's parental rights under subsection (E) based on evidence of mother's drug use, even though mother claimed drugs not used in children's presence). The caseworker testified to W.W.'s admitted drug use and testified to W.W.'s failure to complete the services set forth in her service plan, including those related to achieving sobriety.

W.W. testified at the hearing she was a "drug addict." As noted, S.H. was removed from W.W.'s care in April 2014. W.W. was arrested the next month for possession of methamphetamine and remained in jail until July 2014, when she posted bond. She returned to jail in September and, on arrival, was found to be in possession of methamphetamine. She was later sentenced to a term of years in prison with a projected release date of September 2016. She was eligible for parole 22 days after the final hearing. W.W. testified her criminal history included a conviction for possession of marijuana in 2007. Also, a behavioral health services screening conducted on W.W.

---

[5] That child was removed from W.W.'s care due to W.W.'s drug use and was placed with a family member. W.W. maintains the right to have supervised visits with that child.

6

and admitted into evidence showed the screener's conclusion that W.W. "does appear to meet DSM IV criteria for dependence based on: lack of control; inability to abstain; continued use knowing harm; and withdrawal . . ." . From the evidence presented, the trial court reasonably could have reached a firm conviction W.W. had pursued a course of conduct, through her chronic drug use, that endangered S.H.'s physical and emotional well-being. *See Walker,* 312 S.W.3d at 617 (illegal drug use may support termination under subsection 161.001(1)(E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned)".

The trial court could have further determined that W.W.'s arrest for possession of methamphetamine a month after S.H. was removed demonstrated the risk W.W. would continue to pursue an endangering course of conduct if he were placed back in her care. *See In re A.H.,* No. 02-06-00064-CV, 2006 Tex. App. LEXIS 8432, at *8 (Tex. App.—Fort Worth Sept. 28, 2006, no pet.) (mem. op.) (noting that stability and permanence are paramount in the upbringing of children, that an endangering environment can be created by a parent's involvement with an illegal drug, and that a factfinder may infer from past conduct endangering the children's well-being that similar conduct will recur if the children are returned to the parent). The court could have considered that such a risk was present despite appellant's testimony of her rehabilitation while incarcerated, which testimony we summarize in our discussion of best interests.

Appellant argues the evidence in this case is comparable with that adduced in *In the Interest of D.J.J.,* 178 S.W.3d 424 (Tex. App.—Fort Worth 2005, no pet.), in which the parental rights of a father were terminated. *Id.* at 430. The argument disregards the

7

presence of methamphetamine in the bodies of W.W. and her infant son at the time of his removal. Given that evidence, the trial court reasonably could have found incredible W.W.'s denial that she used the drug around the child. And the drug's presence in his body demonstrates actual injury to the child, not merely a threat to his physical well-being. We conclude that, viewed in light of the entire record, the disputed evidence could have been reconciled in favor of the trial court's endangerment determination or was not so significant as to preclude the trial court's reasonable formation of such a belief or conviction. Accordingly, we find the evidence was factually sufficient to support the subsection (E) finding.[6] *See* TEX. FAM. CODE ANN. § 161.001(1)(E). We overrule W.W.'s first two issues by which she challenges the factual sufficiency of the evidence supporting the trial court's findings.

We turn next to appellant's challenge of the sufficiency of the evidence supporting the trial court's best interests finding. There is a strong presumption that keeping a child with a parent is in the child's best interests. *In re R.R.,* 209 S.W.3d 112,116 (Tex. 2006). But prompt and permanent placement of the child in a safe environment is also presumed to be in his best interests. TEX. FAM. CODE ANN. § 263.307(a) (West 2008). The best interests analysis evaluates the best interests of the child, not that of the parent. *In the Interest of A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.). The following factors may be considered in determining the best interests of the child: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E)

---

[6] Having determined the record contains evidence sufficient to sustain the subsection (E) ground, we need not address the evidence supporting the remaining grounds also found by the court.

the programs available to assist these individuals to promote the best interests of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

By the time of the final hearing, S.H. was just over a year old, too young to express his own desires. The factfinder may consider whether the child has bonded with the foster family, is well-cared for by them, and has spent minimal time with a parent. *In re J.D.,* 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The record shows S.H. is doing very well living with his aunt and uncle. He "has bonded to his maternal aunt, and he is doing really good." The aunt and uncle plan to adopt S.H. This factor weighs in favor of termination of W.W.'s rights.

Most notable, however, is the evidence, including the testimony of W.W. herself, showing W.W.'s long history of drug abuse. She used drugs both before and after her son's removal. She testified to previous failed attempts at rehabilitation and also testified to her arrests, convictions and incarceration for possession of controlled substances. This is a significant factor weighing in favor of termination. *See In the Interest of T.L.R.,* No. 14-14-00812-CV, 2015 Tex. App. LEXIS 3242, at *22-23 (Tex. App.—Houston [14th Dist.] Apr. 2, 2015) (mem. op.) (citation omitted) (parent's drug use supports a finding that termination is in the best interests of the child).

9

The caseworker testified W.W. had not seen S.H. since August 2014 and had not made any child support payments. But W.W. did write letters to S.H., requested pictures of him, and asked the caseworker about him. Nevertheless, W.W. was incarcerated for most of the pendency of this case, had a projected release date of September 2016, and had not shown the ability, outside of incarceration, to remain sober, to refrain from committing criminal offenses, to obtain and maintain employment, or to properly care for S.H. The caseworker admitted the Department had no plans to move S.H. from his aunt's home even if W.W.'s parental rights were not terminated but believed it was in S.H.'s best interests to achieve permanency. The trial court could have seen this evidence as support for a finding that termination, rather than permanent managing conservatorship to W.W. or the aunt and uncle, was in S.H.'s best interests.

W.W. told the court she attempted to begin some of the services required in her service plan. She testified she contacted the counselor and a rehabilitation facility but both had waiting lists. She was able to attend one counseling session. Also, she "set up a psych evaluation" but the "waiting list was . . . four or five months long." She admitted she had not completed any services, other than a parenting class and a peer health education course, but attributed it to the long waiting lists. But, she also told the court she was on her ninth week and fourth step in a 12- step program. She testified, "It's great. It's really working—it working a lot better than the—even the rehabilitation that I had in the past." She also told the court she attends church at the unit and "[e]very time it's offered I go . . . to NA or AA." She testified that about "five or six months ago" she realized she had "changed . . . really changed [her] outlook on life." She told the court that after release she plans to attend 180 NA or AA meetings in 90 days to keep

10

sober.   She also plans to attend church every week and to "work two jobs to keep [herself] busy and to pay [her] child support . . . ".   It was for the trial court, however, to weigh these recent and commendable improvements in W.W.'s outlook and behavior against the other evidence it heard bearing on the best interests of the child.   *See In re J.O.A.,* 283 S.W.3d 336, 346 (Tex. 2009) ("[w]hile recent improvements made by [the parent] are significant, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices.").

And, even with the recent improvements, appellant's testimony indicated the benefit to S.H. would be postponed until some time in the future.   W.W. told the court she plans to live in a halfway house for a period of time if she is granted parole.   She told the court she needs the structure and stability offered there and has already written a facility and been accepted.   In the meantime, she asked the court to allow her sister and brother-in-law to care for S.H. so that she doesn't "lose [S.H.] completely."   She admitted it wasn't "fair" to put S.H. "what [she's] put [him] through" and she did not expect to see S.H. for several months after her release.   The trial court could have seen the evidence that several months would pass before appellant could effectively parent S.H. as further indicating termination was in his best interests.

The Department caseworker and the child's volunteer advocate expressed opinions it was in S.H.'s best interests that W.W.'s parental rights be terminated.

We conclude that, viewed in light of the entire record, any evidence that could not have been reconciled in favor of the trial court's best-interests finding was not so

11

significant as to preclude the court's firm belief or conviction the finding was true. The evidence was factually sufficient, and we overrule W.W.'s third issue.

## Conclusion

Having determined sufficient evidence supports the trial court's predicate ground and best interests findings, we affirm its order.

James T. Campbell
Justice