

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00110-CV

_____

IN THE INTEREST OF K.L.M. AND L.M.C., CHILDREN

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. 85989

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Tammy's admitted drug use, refusal to submit to a drug test, and lack of stable housing led to the removal of her young children, K.L.M. and L.M.C.,[1] by the Texas Department of Family and Protective Services (TDFPS). After a trial, a Lamar County jury found that Tammy's parental rights to K.L.M. and L.M.C. should be terminated and that Casey's[2] parental rights to L.M.C. should be terminated. Based on the jury's verdict, the trial court terminated Tammy's and Casey's parental rights, finding (1) that Tammy had engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), (N), (O), (P), and (Q) of Section 161.001(b)(1) of the Texas Family Code; (2) that Casey had engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (D), (E), (N), (O), and (P) of Section 161.001(b)(1); and (3) that termination of their parental rights was in the best interests of the children.[3] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P), (Q), (2) (West Supp. 2017). In this appeal, Casey contends that the evidence is legally and factually insufficient to support termination of his parental rights. Tammy contends (1) that the evidence is legally and factually insufficient to support termination of her parental rights, (2) that the TDFPS misinformed the jury regarding possible contact with the children by Tammy if her rights were terminated, and (3) that the trial court erred in allowing the

---

[1]We refer to the children by their initials and to their parents and other family members by fictitious names to protect the privacy of the children. *See* TEX. R. APP. P. 9.8(b)(2).

[2]Casey is the biological father of L.M.C.

[3]The trial court also terminated the parental rights of Charles to K.L.M., based on Charles' execution of an affidavit of waiver of interest in the child and its finding that termination was in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.106 (West Supp. 2017), § 161.204 (West 2014). Charles is the alleged father of K.L.M.

testimony of the TDFPS's expert witness.  We affirm the trial court's judgment because we find (1) that any complaint regarding the sufficiency of the evidence supporting the jury's findings regarding the grounds for termination was not preserved, (2) that sufficient evidence supports the jury's findings that termination of Casey's and Tammy's parental rights is in the best interests of the children, (3) that Tammy's complaint that the TDFPS misinformed the jury was not preserved, and (4) that Tammy's complaints regarding the testimony of the TDFPS's expert witness were not preserved.

I.      **Sufficiency of Evidence Issues Regarding the Grounds for Termination Were Not Preserved**

In Casey's sole issue and Tammy's first issue, they challenge the legal and factual sufficiency of the evidence to support the jury's verdict terminating their parental rights.  In order to terminate a person's parental rights to his or her child, the fact-finder must find, by clear and convincing evidence, (1) that the person has committed at least one of the grounds for termination under Section 161.001(b)(1) of the Family Code, and (2) that termination is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001(b)(1)–(2); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Although not specifically addressed in either of their briefs, to the extent that their issues challenge the legal and factual sufficiency of the evidence supporting the jury finding of one or more grounds for termination under Section 161.001(b)(1), this challenge has not been preserved. We have previously held,

> As a prerequisite to bringing a legal sufficiency challenge in a parental-rights termination appeal following a jury trial, a parent must raise the legal sufficiency challenge with the trial court in either:  "(1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict (JNOV); (3) an objection to the

3

> submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial."

*In re A.L.*, 486 S.W.3d 129, 130 (Tex. App.—Texarkana 2016, no pet.) (quoting *In re C.Y.*, No. 02-15-00152-CV, 2015 WL 6394559, at *2 (Tex. App.—Fort Worth Oct. 22, 2015, no pet.) (mem. op.) (citing *In re D.J.J.*, 178 S.W.3d 424, 426–27 (Tex. App.—Fort Worth 2005, no pet.))). In this case, neither Casey nor Tammy challenged the legal sufficiency of the evidence supporting the jury's finding that they committed one or more grounds under Section 161.001(b)(1) in any of the manners set forth above. Therefore, we find that, to the extent Casey and Tammy challenge the legal sufficiency of the evidence supporting the jury's finding of one or more grounds under Section 161.001(b)(1), they have failed to preserve their legal sufficiency challenges for appeal.

In addition, the Texas Rules of Civil Procedure require the filing of a motion for new trial as a prerequisite to asserting a claim of factual insufficiency of the evidence supporting a jury finding complaint on appeal. *Id.* (citing *In re O.M.H.*, No. 06-12-00013-CV, 2012 WL 2783502, at *2 (Tex. App.—Texarkana July 10, 2012, no pet.) (mem. op.)); *see* TEX. R. CIV. P. 324(b)(2). Since neither Casey nor Tammy filed a motion for new trial challenging the factual sufficiency of the evidence supporting the jury's finding of one or more grounds under Section 161.001(b)(1),[4] to the extent their factual sufficiency complaints challenge that jury finding, they are not preserved

---

[4]Casey's and Tammy's motions for new trial only challenge the legal and factual sufficiency of the evidence supporting the jury's finding that termination was in the best interest of K.L.M. and/or L.M.C. Even if Casey's and Tammy's challenges as to the factual and legal sufficiency of the evidence supporting a finding of the grounds for termination had been preserved, we note that it is undisputed that both Casey and Tammy failed to comply with the provisions of the trial court's order specifically establishing the actions necessary for them to obtain the return of their children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). "Only one predicate finding under Section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003)).

4

for appeal. *Id.* (citing *O.M.H.*, 2012 WL 2783502, at *2; *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003)).

## II.   Sufficient Evidence Supports the Jury Finding that Termination is in the Best Interests of the Children

Casey's sole issue (and Tammy's first issue) also challenges the legal and factual sufficiency of the evidence supporting the jury's findings that termination of their parental rights is in the best interest of K.L.M and/or L.M.C.  "The natural right existing between parents and their children is of constitutional dimensions."  *In re L.E.S.*, 471 S.W.3d 915, 919 (Tex. App.— Texarkana 2015, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)).  It is a fundamental right of parents to make decisions regarding "the care, custody, and control of their children."  *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)).  "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial."  *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)).  We, therefore, "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights."  *Id*. at 919–20 (quoting *A.B.*, 437 S.W.3d. at 500).  "[I]nvoluntary termination statutes are strictly construed in favor of the parent."  *Id.* at 920; *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20).

Termination of parental rights requires the trial court to find, by clear and convincing evidence, that the parent has committed at least one statutory ground for termination and that termination is in the child's best interest.  TEX. FAM. CODE ANN. § 161.001(b)(1), (2); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012).  "'Clear and convincing evidence' is that 'degree of proof that

5

will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *L.E.S.*, 471 S.W.3d at 920 (quoting TEX. FAM. CODE ANN. § 101.007 (West 2014)); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

The clear and convincing evidence standard requires us, in our legal sufficiency review, to "consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction" that termination was in the best interests of the children. *Id.* (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). We assume that the fact-finder "resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *J.P.B.*, 180 S.W.3d at 573).

Our review of factual sufficiency under this standard requires us to "give due deference to [the] jury's fact[-]findings," and we may not "supplant the jury's judgment with [our] own." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (citing *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)). Therefore, we "give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *L.E.S.*, 471 S.W.3d. at 920 (citing *H.R.M.*, 209 S.W.3d at 109). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (alteration in original) (quoting *H.R.M.*, 209 S.W.3d at 109 (quoting *C.H.*, 89 S.W.3d at 25). "If, in light of the entire record, the disputed evidence that

6

a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). To make this determination, we engage in "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *Id.* (quoting *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26)).

Nevertheless, "the rights of natural parents are not absolute; protection of the child is paramount." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). We will not sacrifice a child's emotional and physical interests simply to preserve parental rights. *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26).

### A.    The Evidence at Trial

At the time of trial, K.L.M. and L.M.C. were three and one-half years old and twenty-three months old, respectively. Casey initiated the involvement of the TDFPS because he was in jail and was worried about the children. During the TDFPS's investigation, Tammy admitted the current use of marihuana and her past use of methamphetamine, but refused to submit to a hair-follicle drug test. The TDFPS also found that there was ongoing methamphetamine use in the home, that needles were found in the home, that both children tested positive for methamphetamine, that the children were living in an unstable, dirty home environment with little food, and that Tammy would leave the children with inappropriate caregivers, prompting removal of the children.

Tammy began smoking marihuana when she was thirteen, and she continued to smoke it even when she was pregnant with K.L.M. She began using methamphetamine when she worked as a dancer. During the course of this case, her drug use continued, and she began using methamphetamine intravenously when her visitation rights with the children were suspended because of a drug test that was positive for marihuana. She admitted that she had not had a clean drug test during the year before trial. Although she completed her parenting classes and psychological assessment, Tammy did not comply with the recommendations of the assessment, which included a psychiatric consult for medical management of depression and inpatient drug rehabilitation. In addition, Tammy failed to take five random drug tests, did not complete inpatient and outpatient drug treatment, and did not maintain stable housing or stable employment, all of which were required by the trial court's order and family service plan.

At the time of trial, she had been in jail for seventy-three days and had been convicted of possessing four to 200 grams of methamphetamine, for which she received a seven-year prison sentence. Tammy also admitted that during the course of the case, she had assaulted a police officer with a razor knife and had committed (and been convicted of) misdemeanor family violence assault and resisting arrest.

Tammy testified that she is attending Alcoholics Anonymous in prison and that she feels prison is her rehabilitation protocol. She acknowledged that her children had been provided a safe, stable environment by her aunt, Sandra, and that they had done well there. Tammy also acknowledged that she wanted to retain the legal right to see her children after she gets out of prison. She said that she wants to get her GED, attend more parenting classes, get a degree, and

8

attend Narcotics Anonymous while in prison. She testified that she has a support group in the pastor of Gospel Lighthouse Church and his wife, and asked to be allowed to prove herself when she gets out of prison. She attributed all of her issues to her drug use. The evidence also showed that when Tammy had visitation with the children at the beginning of the case, her actions toward the children were loving and appropriate and they had a good bond.

At the time of trial, Casey had been in jail for thirteen days awaiting a hearing on the State's four motions to revoke community supervision related to his two felony convictions for family violence assault with prior conviction and a state jail felony conviction for criminal mischief. He was facing a prison sentence of ten or more years. Casey testified that the motions to revoke resulted from his admission to his community supervision officer that he had used methamphetamine on September 8, 2017. The evidence also showed that Casey had been physically violent with Tammy, as she was with him, and that the children saw one instance of his physical violence toward Tammy in which he choked her, slapped her, and held her out of a second-story window.

During the course of the case, Casey failed two random drug tests, including one conducted eleven days before trial in which he tested positive for methamphetamine.[5] In addition, Casey failed to pay child support, failed to complete his psychological evaluation and individual counseling, failed to take random drug tests, and failed to maintain stable housing and stable

---

[5]Casey, who was twenty-nine years old at the time of trial, testified that he is an addict and began using methamphetamine when he was nineteen.

9

employment as required by the trial court's order and his family service plan. Casey did not visit the children at any time during the case.

The evidence also showed that the children had been living with Tammy's aunt, Sandra, from the time they were removed from Tammy's care. It was undisputed that Sandra has provided the children with a safe, stable home environment and that they have been loved and had their needs met by her. The TDFPS's representative, Kristyn Anderson, opined that termination of the parent's rights was in the best interests of the children because it would enable Sandra to adopt the children, an action which will give them stability and a permanent home with lifelong support and relationships. She testified that since coming into Sandra's care, the children have gone from being very reserved and withdrawn to opening up and loving where they are. In addition, the children are bonded with Sandra and feel loved and provided for. She also opined that Tammy and Casey would be unable to provide for the emotional and physical needs of the children and that returning the children to them would subject the children to the risk of further exposure to drugs and domestic violence. C.J. Joseph, the Court Appointed Special Advocate (CASA) for the children, agreed with Anderson's opinion. Both Anderson and Joseph acknowledged that they did not know the future of Sandra's relationship with her partner, Sharon, and that if they were to break up, it could be traumatic to the children. However, Joseph pointed out that the children would still have one loving parent, Sandra. Sandra testified that she planned to adopt the children and that she was agreeable to allowing Tammy to have a role in the children's lives if she got off of drugs, remained sober, and had stability in her life.

10

## B.    Best Interest Factors

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)).   "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

In determining the best interest of the child, courts consider the following *Holley* factors:

(1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2017).

It is not necessary to prove all of these factors as a condition precedent to parental-rights termination. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re N.L.D.*, 412 S.W.3d 810, 819 (Tex. App.—Texarkana 2013, no pet.).  Evidence relating to a single factor may suffice in a particular situation to support a finding that termination is in the best interest of the child. *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.) (citing *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 & n.39 (Tex. 2002)).  When considering the child's best interest, we may take into account

11

that a parent is unable to provide adequate care for a child, lacks parenting skills, or exercises poor judgment. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest. *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.). Further, the amount of contact between the parent and child, the parent's failure to provide financial and emotional support, continuing criminal history, and past performance as a parent are all relevant in determining the child's best interest. *See C.H.*, 89 S.W.3d at 28. However, even if a parent's behavior "may reasonably suggest that a child would be better off with a new family, the best interest standard does not permit termination merely because a child might be better off living elsewhere." *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) (quoting *In re W.C.*, 98 S.W.3d 753, 766 (Tex. App.—Fort Worth 2003, no pet.)).

### C. Analysis

#### 1. Casey

Although there was testimony that L.M.C. was bonded with Sandra, and a paucity of testimony regarding Casey's relationship with the child, at twenty-three months old, L.M.C. was too young to express his desires. Therefore, we find that the first *Holley* factor is neutral.

Casey's continued use of methamphetamine, his history of domestic violence, his failure to maintain stable housing and employment, his failure to attend visitation with L.M.C. when he had the opportunity, his failure to provide financial and emotional support, and his continued criminal activities which have exposed him to a prison sentence of ten or more years all support an inference that he is unable to provide for the physical and emotional needs of the child and that

12

returning the child to him would pose an emotional, and possibly, physical danger to the child. In addition, these actions and omissions by Casey support an inference that his existing parental relationship with L.M.C. is not a proper one. A rational jury could have reasonably formed a firm conviction that these *Holley* factors weigh heavily toward termination of his parental rights.

Also, Casey's failure to maintain stable housing and employment and his impending imprisonment for an indeterminate number of years support an inference that he is not able to provide a stable home for the child. Further, although Casey had been offered a number of programs to address both his addiction and other issues, he failed to take advantage of them. All that Casey offered to explain his issues was to blame his drug addiction and Tammy for his failures and his hope to do better in the future. Based on this evidence, a rational jury could have reasonably formed a firm conviction that these *Holley* factors weigh heavily toward termination of his parental rights.

Based on this record, we find that a rational jury could have reasonably formed a firm conviction that termination of Casey's parental rights was in L.M.C.'s best interest. Therefore, we find that legally and factually sufficient evidence supports the termination of Casey's parental rights, and we overrule Casey's sole issue.

### 2. Tammy

There was testimony that the children loved Tammy and were bonded with her at the beginning of the case. There was also testimony that the children were bonded with Sandra and loved living with her. However, at three and one-half years old and twenty-three months old,

13

K.L.M. and L.M.C. were too young to express their desires. Therefore, we find this *Holley* factor to be neutral.

Tammy's continued use of methamphetamine, her history of domestic violence, her failure to maintain stable housing and employment, her failure to provide financial and emotional support to the children, and her continued criminal activities that have exposed her to a prison sentence of seven years support an inference that she is unable to provide for the physical and emotional needs of her child and that returning the children to her would pose an emotional, and possibly, physical danger to the child. Mitigating against this inference is the undisputed testimony that on her visitations at the beginning of the case, Tammy acted appropriately and that there was a bond and loving relationship between the children and her. There was also testimony that before Tammy began using methamphetamine, she properly parented the children. Nevertheless, Tammy failed to take advantage of any of the programs required under the family service plan that would specifically address her drug addiction, even when she was warned by the trial judge that failure to do so might result in termination of her parental rights. In addition, these acts and omissions by Tammy support an inference that her parental relationship with the children is not a proper one. A rational jury could have reasonably formed a firm conviction that these *Holley* factors weigh heavily toward termination of her parental rights.

Also, Tammy's failure to maintain stable housing and employment, and her impending imprisonment for at least five years, support an inference that she is not able to provide a stable home for the children. Further, although Tammy was offered a number of programs to address her addiction and other issues, she failed to take advantage of them. Tammy blamed her drug

14

addiction for her failure and testified that since she has been confined, she has begun, or hopes to begin, some of these programs. Based on this evidence, a reasonable jury could have reasonably formed a firm conviction that these *Holley* factors weighed heavily toward termination of her parental rights.

Finally, Tammy testified that she hoped to get her GED and address her issues while in prison to enable her to raise her children the way she should have. She also testified regarding the support of her pastor and his wife. However, considering the evidence of Tammy's acts and omissions during the course of this case, the jury could reasonably discount this testimony. The TDFPS plans to support Sandra's intent to adopt the children. A reasonable jury could reasonably form a firm conviction that these *Holley* factors weighed in favor of termination of Tammy's parental rights.

Based on this record, we find that a rational jury could have reasonably formed a firm conviction that termination of Tammy's parental rights was in K.L.M.'s and L.M.C.'s best interests. Therefore, we find that legally and factually sufficient evidence supports the termination of Tammy's parental rights, and we overrule her first issue.[6]

---

[6]In her brief, Tammy asserts that the TDFPS misled the jury in its final argument by asserting that if she turns her life around, she would still get to see the children. In addition, she points to the testimony of several witnesses who opined that, if Tammy got and remained sober and clean, it would be good for the children for her to be involved in their lives. Therefore, Tammy argues, these alleged misrepresentations negated any evidence that termination of her parental rights was in the best interests of the children. Tammy cites *In re S.R.L.*, 243 S.W.3d 232 (Tex. App.—Houston [14th Dist.] 2007, no pet.), in support of her argument. In that case, the court of appeals found that there was insufficient evidence that termination of the father's parental rights was in the best interest of the children. *Id.* at 235–36. However, *S.R.L.* is distinguishable from this case. In *S.R.L.*, there was, as in this case, testimony regarding the value of the father having some continuing relationship with the children. However, unlike this case, there was also undisputed testimony showing that the father had reformed his prior criminal life, had completed his family service plan, had taken steps to prepare for a productive life once he was released from prison, had married, and was able to provide the children with a stable home environment. *Id.* at 234. In this case, the testimony showed that Tammy had done little, if anything, to prepare for a productive life, to show that she was willing and able to provide for her

15

**III.  Tammy's Complaint Regarding Alleged Misconduct Was Not Preserved**

In her second issue, Tammy complains that the TDFPS misled the jury by asserting in its opening statement and closing argument, and by eliciting testimony from several witnesses, that even if her parental rights were terminated, Tammy would still have contact with her children. Tammy argues that since she would have no legal right to have contact with her children after her parental rights are terminated, these arguments and testimony gave a false impression to the jury. However, no objection was made by any party to the statements made by the TDFPS in its opening statement and final argument, or to the witness testimony that Tammy cites in her brief.

Since "[p]reservation of error is a systemic requirement on appeal," we will ordinarily "review preservation of error on [our] own motion." *In re E.R.C.*, 496 S.W.3d 270, 276–77 (Tex. App.—Texarkana 2016, pet. denied) (quoting *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009) (citations omitted)). If an issue has not been preserved for appeal, we should not address its merits. *Id.* at 277 (citing *Ford*, 305 S.W.3d at 532–33). "To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if those are not apparent from the context." *Id.* (citing TEX. R. APP. P. 33.1(a)(1)). "Further, the trial court must either have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected

___

children, or to provide them with a stable home environment. In addition, we note that most of the witnesses Tammy cites also testified that termination was in the best interest of the children. Further, the jury was the sole judge of the credibility of the witnesses and the weight to be given to their testimony. Finally, under the jury charge, in order to find that Tammy's parental rights should be terminated, they also had to find that the TDFPS had proven by clear and convincing evidence that termination of her parental rights was in the best interests of the children. Considering the evidence in its entirety, a rational jury could reasonably come to a firm conviction that termination of Tammy's parental rights was in the best interests of the children.

to the trial court's refusal to rule." *Id.* (citing TEX. R. APP. P. 33.1(a)(2)). Since Tammy did not object to the statements or testimony she complains of on appeal, she has not preserved this issue for our review. We overrule Tammy's second issue.

## IV. Tammy's Complaints Regarding the Testimony of TDFPS's Expert Were Not Preserved

In her third issue, Tammy complains that the trial court erred in allowing Marcie Temple, a counselor at the TDFPS, to testify because the TDFPS failed to disclose her opinions and the basis of her opinions in its response to Tammy's request for disclosures. Tammy first contends that none of Temple's testimony should have been admitted. In order to address this contention, we first determine the substance of Tammy's objection at trial.

Initially, we note that Temple, who counseled with Tammy, was both a fact witness and an expert witness. Before Temple testified, Tammy objected that she should not be allowed to testify since the TDFPS failed to disclose Temple's mental impressions and the basis of her opinions in response to Tammy's request for disclosures. In a hearing outside the presence of the jury, as the trial court and the parties discussed what Temple's testimony would be, it became clear that Temple would testify regarding Tammy's failure to complete counseling and that she did not achieve the goals of counseling, in addition to Temple's offer of an opinion as to whether termination was in the best interests of the children. After it was pointed out that the TDFPS's responses disclosed that Temple would testify regarding Tammy's compliance and progress with counseling, and that all of Temple's clinical notes had been produced to Tammy, Tammy told the trial court that she had no objection to Temple testifying as a fact witness, but did object to her offering testimony regarding the best interests of the children. The trial court then sustained

17

Tammy's objection to Temple giving an opinion on the best interests of the children. After a question was raised regarding opinions that appeared in the clinical notes, Tammy again clarified her objection, stating, "If -- if it's something that's contained in -- in a note, I will not object to it because they sent the notes," but she still objected to any opinions that were not contained in the notes. The trial court then sustained Tammy's objection as to any expert opinion not contained in the clinical notes.

Thus, Tammy's ultimate objection at trial was limited to Temple's testimony regarding any opinions that were not contained in her clinical notes, which objection was sustained. Since Tammy ultimately did not object to Temple being allowed to testify at all, to the extent Tammy complains that the trial court erred in allowing Temple to testify, this complaint was not preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1).

Tammy also complains of some specific testimony that she asserts was allowed by the trial court. First, Tammy complains that in spite of the trial court's prior ruling, Temple was allowed to testify during her examination by the TDFPS that she thought Tammy had some undiagnosed mental issues. This testimony came about as follows:

> Q. [By attorney for the TDFPS] Okay. To be clear, so, if -- if she couldn't give up the drugs that she was not going to progress in therapy?
>
> A. It would have been very hard.
>
> Q. And -- and you're aware that that's exactly what happened?
>
> A. Yes. Although I do think there was also some -- I think there's some undiagnosed mental issues there.

The context of this testimony shows that the portion of Temple's testimony regarding undiagnosed mental issues was nonresponsive to the question asked. However, Tammy did not object to the nonresponsive answer. Therefore, any complaint regarding this testimony was not preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1).

Next, Tammy complains that the trial court allowed the children's ad litem attorney to ask Temple about her opinion as to whether Tammy had unresolved treatment issues concerning her childhood sexual abuse. However, the record shows that Tammy objected to this question, and the trial court sustained the objection. Since Tammy's objection was sustained, this complaint was not preserved for our review. *See* TEX. R. APP. P. 33.1(a)(2).

Next, Tammy complains that the trial court ruled that the ad litem could question Temple about Tammy's undiagnosed mental illness, discussions with her about trauma, and discussions with her about family violence. First, we note that Tammy informed the trial court that she did not have a problem with questions regarding trauma and family violence. In addition, the questioning by the ad litem regarding undiagnosed mental illness consisted solely of whether Tammy had reported to her that she had been the victim of sexual abuse as a child and whether Tammy received treatment for that trauma. These questions were propounded to Temple as a fact witness regarding her counseling with Tammy. As previously noted, Tammy had expressed to the trial court that she had no objection to Temple testifying as a fact witness. Since Tammy did not object to any of this testimony at trial, she did not preserve these complaints for our review. *See* TEX. R. APP. P. 33.1(a)(1).

Since she did not preserve this issue for our review, we overrule Tammy's third issue.

19

For the reasons stated, we affirm the judgment of the trial court.


                                        Bailey C. Moseley
                                        Justice

Date Submitted:        February 13, 2018
Date Decided:          February 21, 2018